Eugene J. VALLEY, Plaintiff,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Third-Party Plaintiff,

v.

Bert M. LAFFERTY, d/b/a Reliable Waterproofing Company, Third-Party Defendant.

Civ. A. No. R.I.–23.

United States District Court
S. D. Illinois, N. D.

June 23, 1964.

Frank Schubert, Moran, Klockau, Mc-Carthy, Schubert & Lousberg, Rock Island, Ill., for plaintiff.

Edward R. Phelps, U. S. Atty., Springfield, Ill., for defendant.

John Telleen, Reidy, Katz, McAndrews, Durkee & Telleen, Rock Island, Ill., for third party defendant.

MERCER, Chief Judge.

This is a suit by Eugene J. Valley against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., for damages for personal injuries. The court is vested with jurisdiction under the provisions of 28 U.S.C. § 1346(b).

On and prior to June 12, 1961, plaintiff was employed by Bert M. Lafferty, d/b/a Reliable Waterproofing Company, sometimes referred to herein as Reliable, who was then engaged in the performance of a contract with the United States for the painting of certain buildings and structures of the Rock Island Arsenal at Rock Island, Illinois. On that date, plaintiff was engaged with one Loren Allison in the painting of an arsenal smokestack which was approximately 210 feet high. Plaintiff fell, sustaining injuries.

The first count of plaintiff's complaint alleges that the United States violated the provisions of the Illinois Structural Work Act, Ill.Rev.Stat.1959, c. 48, § 60, 69.[1] The theory of the second count of plaintiff's complaint is that the United States was guilty of common law negligence in the premises.

After an order was entered separating the issues of liability and damages for trial, the case was tried by the court upon the issue of liability and taken under advisement for decision.

There is no dispute in the evidence as to the manner of the occurrence in litigation. The smokestack which Valley was painting arose approximately 210 feet to the upper lip thereof. Two steel "I" beams, crossed in the form of an ×, were built into the top of the stack with the respective ends thereof being imbedded in concrete on the inside of the lip of the stack. Plaintiff and Allison were assigned the job of painting the stack. For that purpose, each was equipped by Reliable with a boatswain's chair, attached to two ropes, or falls, suspended from the top of the stack. Mr. Miller, engineer for the arsenal, told plaintiff's foreman that he could suspend the falls

1. Section 60—
"All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon * * *."
Section 69—
"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereon, * * *.
" * * *
"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives."

from the "I" beams inside the stack. Miller had never been to the top of the stack and had never inspected those beams. The falls used by plaintiff and Allison were rigged by themselves. They secured one end of a rope around the center of the X of the "I" beams and tied the other end to a steel rung of a ladder on the inside of the stack. They secured a steel cable to the center of the "I" beams which extended out over the lip of the stack. The two sets of falls which they were using were then attached to that cable. Each set of falls consisted of two block and tackles and two ropes from which the boatswain's chair was suspended. In use, the workmen use the falls to draw the chairs up or down the stack to the point where they are working at any particular time.

On June 12, 1961, plaintiff climbed to the top of the stack, using a steel ladder built into the outside of the stack, to inspect the rigging before going to work. Having inspected the rigging at the top of the stack he then attempted to get into his boatswain's chair which was positioned some considerable distance down the side of the stack by sliding down one of the ropes, or falls, attached to the chair. One end of one of the "I" beams was loose in the lip of the stack, the concrete over that end of the beam being broken. While plaintiff was sliding down the fall toward his chair, the beam shifted slightly and he was thrown from the fall to the ground sustaining injuries.

Work on the whole painting project was suspended for the remainder of that day consistent with customary practice in the trade. Donald G. Yates, whose deposition was read into evidence, was assigned by Reliable to take plaintiff's place with Allison in the completion of the painting of the stack. That work was resumed on the next suitable day after the accident, suitability being determined by the conditions of weather and the amount of wind. Before resuming work, Allison and Yates determined that they would attach a second rope support to the center of the "I" beams. That decision was made prior to Yates' inspection of the top of the stack and prior to Yates and Allison mounting to the top of the stack on that day. Having so decided, they then took a line and climbed to the top of the stack, secured one end of the line to the center of the crossed "I" beams and secured the other end of the line to a lower steel rung on the inside of the stack. No other adjustments or repairs were made in the equipment being used by Yates and Allison prior to their resuming work. Prior to their mounting to the top of the stack, they had drawn their boatswain's chairs to the top of the stack so that they could get into the chairs at that point and lower themselves to the area then being painted. Thereafter Yates and Allison completed the painting of the stack, the task consuming approximately one week of worktime.

In addition to the facts hereinabove related, I find the facts to be as follows:

### FINDINGS OF FACT

1. Bert M. Lafferty, d/b/a Reliable Waterproofing Co., was an independent contractor engaged in the painting of the stack in issue and other structures upon the Arsenal premises.

2. Mr. Lafferty, acting through his agents, was in charge of the work being done. The person immediately in charge of the painting of the stack was Mr. Callahan who was employed by Reliable.

3. The United States was not "in charge" of the work of painting this stack within the meaning of Section 69 of the Act. Under the contract with Reliable, the United States reserved the right of inspection of the work to be done. Mr. Miller, the engineer for the Arsenal, conducted such inspections as to the quality of the work, participated in a safety meeting of Reliable's employees after plaintiff was injured and, from time to time, called the attention of Mr. Callahan to what he considered to be breaches of safety requirements. He also told Mr. Callahan that he might use the "I" beams in the stack for the purpose of suspending the falls for the boatswain's chairs.

4. The "I" beams in question were a part of the stack itself and the property of the United States.

5. Of all persons involved, only plaintiff and Allison had inspected the conditions at the top of the stack prior to the occurrence which gave rise to this suit.

6. Each plaintiff, Mr. Allison and Mr. Yates were employees of Reliable.

7. There is a custom of the painter's trade that workmen painting high structures have the final word in the determination whether the rigging of the equipment to be used is adequate for their own safety. That custom was followed in this instance. Plaintiff and Mr. Allison installed all of the rigging for the painting of this stack, including the cable connection to the crossed "I" beams.

8. The "I" beams provided adequate support for the falls and chair rigs used upon this stack. At the commencement of the job, the persons most intimately concerned with the safety factor, namely, the plaintiff and Mr. Allison, were satisfied with the support which they provided. After plaintiff's injury, Mr. Allison and Mr. Yates completed the painting of the stack without any repair or alteration of the rigging, except that they did add the additional line as previously mentioned.

9. Plaintiff's injury resulted from his own misuse of adequate equipment, not from any defect in the equipment or the supporting members. Although there was testimony that the practice of sliding down one of the falls to a chair below, instead of raising the chair to the user's position, was sometimes employed by painters on high work, I credit the testimony of Mr. Callahan that that was not a safe and accepted method, that the method had never been used in his presence and that he would not have permitted such an act had he had knowledge thereof.

10. There was no wilful violation of the Act by the United States.

Findings of fact 11 and 12, which follow, relate only to the negligence count of the complaint.

11. The United States was not guilty of negligence in the premises.

12. Plaintiff's injury resulted from his own negligent and reckless act of attempting to reach his chair by sliding down the falls from the top of the stack.

## CONCLUSIONS OF LAW

1. Before civil liability under Section 69 for injuries may be imposed upon an owner of premises where structural work is being done it must appear that such owner had charge of the operations involving the injury, Gannon v. Chicago, M. St. P. & P. Ry. Co., 22 Ill.2d 305, 175 N.E.2d 785; Cannon v. United States, 7 Cir., 328 F.2d 763; Bott v. Anding, 7 Cir., 296 F.2d 706; Miller v. B. F. Goodrich Co., 7 Cir., 295 F.2d 667; Skinner v. United States, E.D.Ill., 209 F.Supp. 424, and that there was a wilful violation of the Act by such owner. Gannon v. Chicago, M. St. P. & P. Ry. Co., supra; Miller v. B. F. Goodrich Co., supra. Wilfully, within the intendment of the Act, means knowingly. A person "in charge of" work is chargeable with knowledge of defects known to exist or those which reasonable care would have disclosed. Kennerly v. Shell Oil Co., 13 Ill.2d 431, 439, 150 N.E.2d 134; Miller v. B. F. Goodrich Co., supra, 295 F.2d at page 669.

2. The right to inspect reserved to the United States by the contract did not constitute its being "in charge" of the work. Cannon v. United States, supra. The activities of Mr. Miller as revealed by the evidence do not constitute the United States as being "in charge" of the painting of the stack. Upon all of the evidence, I conclude that in such activities Mr. Miller was merely exercising the contract right to inspect the work and that he did not, within the contemplation of the law, presume to take charge of the work for the United States. Nor does the fact that the "I" beams were the property of the United States constitute it as being in charge of the work.

3. Reliable, through its employees, was "in charge of" the work of painting

the stack as that phrase is used in Section 69 of the Act. The United States was not in charge thereof.

■ 4. The evidence is inconsistent with a conclusion that there was a wilful violation of the Act by the United States. The conclusive proof that the "I" beams provided adequate support for the rigging used in painting the stack is inconsistent with the existence of any violation of the Act.

Conclusions of law 5 and 6, which follow, relate only to the negligence count of the complaint.

5. Plaintiff has not sustained his burden of proving that the United States was negligent in the premises which led to his injury.

6. Plaintiff's unfortunate injuries proximately and solely resulted from his own negligent conduct.

7. The United States is entitled to a judgment dismissing the complaint and each count thereof.

The cases holding a defendant-owner to be in charge of work do not derogate from that result.

Bott v. Anding, 7 Cir., 296 F.2d 706, involved an owner who was acting as his own contractor in constructing a building to be leased to Kroger Company.

In Miller v. B. F. Goodrich Co., 7 Cir., 295 F.2d 667, Goodrich, the owner, placed its own employee in charge of the painting crew employed by an independent contractor.

Skinner v. United States, E.D.Ill., 209 F.Supp. 424, involved a plaintiff's decedent who was killed while painting hangar doors at Scott Air Force Base. It was there stipulated that the doors opened electrically by means of switches inside the hangars which were under the exclusive control of Air Force personnel. Skinner was on a ladder placed against a hangar door when an Air Force Sergeant inadvertently activated the electrical switch causing the door to move. Its motion threw Skinner from his ladder.

As the court said in Gannon, the question of control is a question of fact to be resolved by the trier of the facts. 22 Ill.2d at page 323, 175 N.E.2d 785.

The evidence before this court leads only to the conclusion that plaintiff failed to prove a cause of action under the Structural Work Act. With reference to the negligence count the evidence compels the conclusion that the injuries proximately resulted from plaintiff's disregard for his own safety. Judgment will be entered dismissing the complaint and each count thereof.