John P. Rooney, Plaintiff-Appellant, *v.* Morton Salt Building, Inc., Defendant-Appellee.

(No. 56950;

First District (4th Division)—May 8, 1974.

Morton A. Resnick, of Chicago (Ellis B. Rosenzweig, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Gary M. Elden and William H. Symmes, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, John P. Rooney, was injured on June 1, 1964, in a one-story fall off a ladder while working as a tuckpointer on the Morton Salt Building. On April 29, 1966, he brought this action against the owner of the building pursuant to the Structural Work Act. (Ill. Rev. Stat. 1963, ch. 48, § 60 *et seq.*) The jury returned a verdict for defendant, and the trial court denied plaintiff's post-trial motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Plaintiff appeals, presenting the following issues for review:

(1) Was the verdict against the manifest weight of the evidence?

(2) Is plaintiff entitled to a new trial because of error in the jury instructions?

The evidence adduced at trial showed that defendant hired Hofer and Associates to perform certain tuckpointing work on its building at 110 North Wacker Drive in Chicago. Hofer agreed to furnish the equipment, hire the tuckpointers, and provide the foremen and supervisors. Morton Salt Building filed a third-party complaint against Hofer for indemnity should it be held liable to plaintiff.

The plaintiff was an experienced tuckpointer, employed by Hofer, when the accident occurred. His injuries resulted from a fall sustained when the wire holding an extension ladder broke.

Plaintiff and a co-worker, Joseph D. Burke, had used the ladder for several weeks before the accident and for 2 hours immediately prior thereto. Before plaintiff got on the ladder, he and Burke tested it by pushing down and also checking the clamps that supported it. "It looked like everything was in place," plaintiff testified, "or I wouldn't have got on it."

Plaintiff stated at trial that Phillip Lundberg, defendant's building superintendent, told him directly how all the work was to be set up and performed. Plaintiff testified further that it was necessary to use an extension-type ladder to go over the top of the building because Lundberg instructed the workmen to avoid going through the office.

Phillip Lundberg discussed the work progress on a daily basis with Hofer's foreman, Jerry Hofer. However, Lundberg testified that he never gave specific instruction to the foreman or plaintiff, and that the way the work was done was left up to the tuckpointers. Lundberg denied seeing the ladder which collapsed before the accident and telling the workmen they could not walk through the office of the building. He stated that plaintiff's foreman was told the workmen could walk through the building and that boards and mats were provided for the men to wipe their feet before walking through any office.

Joseph D. Burke, plaintiff's co-worker, testified that the workmen took all their orders directly from the foreman and that the regular procedure in the trade is that the foreman gives instructions. He stated further that he never heard Lundberg say that the workmen were not to come through the building.

At the close of the evidence, the jury returned a verdict for defendant. Plaintiff appeals from the trial court's denial of his motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

The Structural Work Act provisions that are pertinent to this appeal provide:

"§ 60. * * * [A]ll scaffolds, hoists, cranes, stays, ladders * * * erected * * * by any person, firm or corporation in

this State for the use in the erection, repairing, alteration, removal or painting of any \* \* \* building · \* \* \* shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person ·or persons employed or engaged thereon ·\* \* \*.

\* \* \*

§ 69. Any *owner*, contractor, sub-contractor, foreman or other person *having charge* of the erection, construction, repairing, *alteration*, removal or painting of any *building* \* \* \* within the provisions of this act, .shall comply with all the terms thereof \* \* \*.

\* \* \*

For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; \* \* \*." (Emphasis supplied.) (Ill. Rev. Stat. 1963, ch. 48, §§ 60, 69.)

In the ·instant case, a key issue argued to the jury was whether the defendant was in "charge of" the tuckpointing work on its building within the meaning of the Structural Work Act.

Plaintiff contends that the defendant, who owned the building where the injury occurred, remained in "charge of" the work and is therefore responsible under the terms· of the act. The jury's verdict to the contrary, he argues, is against the manifest weight of the evidence.

■■ Illinois courts have consistently held that whether a particular individual or corporation is a person "having charge of" the work is ´a factual question to be left to the jury's determination. *Miller v. DeWitt* (1967), 37 Ill.2d 273, 286, 226 N.E.2d 630, 639; *Pantaleo v. Gamm* (1969), 106 Ill.App.2d 116, 126, 245 N.E.2d 618, 624; *Sola v. City of Chicago* (1967), 82 Ill.App.2d 266, 274, 227 N.E.2d 102, 107; *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill.App.2d 392, 413, 235 N.E.2d 323, 333; *Clements v. Schless Construction Co.* (1972), 8 Ill.App.3d 291, 296, 290 N.E.2d 21, 25.

· Whether the owner of the property where the accident occurred had charge of the work involving the alleged violation was discussed by the· Illinois Supreme Court in *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill.2d 305, 323, 175 N.E.2d 785, 794. The court concluded that a question of fact for the jury was presented under the circumstances of that case. The court stated:

·· ·"It is undisputed that· the engineering and architectural plans for the work were prepared by the office of the chief architect of the· defendant railroad, and that he and other personnel made frequent inspections of the construction project,· spending as much

as five hours a day on the premises on occasions. It is not clear from the evidence just how detailed those inspections were. It is also undisputed that the brick-laying, assembling and construction of scaffolds, and the placement of ladders were performed by the employees of the Marhoefer Company, and under their supervision. Under these circumstances, it was at most a disputed question of fact whether the owner could be deemed to be in charge of the construction within the meaning of the act, and it would be the province of the jury, under proper instructions, to make that determination."

In *Kobus v. Formfit Co.* (1966), 35 Ill.2d 533, 538, 221 N.E.2d 633, 635, the supreme court reaffirmed its position that the determination of whether an owner is in charge of the construction is a question of fact which must be decided by the jury.

In the instant case, the jury considered the evidence and returned a verdict in favor of the defendant. Plaintiff urges that its verdict was against the manifest weight of the evidence because the defendant hired, selected the materials to be used, inspected, instructed, reviewed the work on a daily basis and directed the workmen on maintaining certain conditions of cleanliness.

Our review of the record shows that there was sufficient evidence to support the jury's verdict. It is undisputed that defendant hired Hofer and Associates to perform the tuckpointing work, that Hofer agreed to supply the equipment and workmen, and that defendant's building superintendent had daily discussions with the foreman about the work progress. However, there was a direct conflict in the testimony regarding the degree of control that defendant retained over the performance of the work. Plaintiff testified that defendant's building superintendent, Phillip Lundberg, directly supervised the work and forbade the workmen from walking through the office of the building. Lundberg testified that he neither gave specific instructions nor directed the workmen not to walk through the building. The testimony of plaintiff's co-worker, Joseph Burke, was consistent with that of Lundberg. Burke testified that he never heard Lundberg instruct the workmen not to walk through the building and that that men received all of their instructions from the foreman.

Thus, on these disputed issues, only plaintiff's testimony supported his theory of the case. Burke and Lundberg gave testimony that was in direct conflict with that proffered by plaintiff. Consequently, we find that there was a sufficient basis for the jury to find in favor of the defendant, and its verdict was not against the manifest weight of the evidence.

To support his position, plaintiff relies heavily upon *Larson v. Com-*

*monwealth Edison Co.* (1965), 33 Ill.2d 316, 211 N.E.2d 247, where the jury instruction equated "in charge of" with "retaining supervision and control," and quotes the following language from that opinion:

> "While it may be conceded that some of the decisions in this jurisdiction involving the Scaffold Act appear to have equated 'having charge' with 'supervision and control' in varying degrees, it is our opinion the language of the statute, and the legislative intent it reflects, do not permit the conclusion that the terms are the inflexible and unbending legal equivalent of the other. The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould,* 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge', they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficial purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." 33 Ill.2d at p. 321-2.

The facts in *Larson* showed that there was a much greater degree of participation by defendant than existed in the instant case. In *Larson*, six Edison employees were on the jobsite at all times to inspect and to insure compliance with the specifications of the contract, and representatives of Edison's Safety Department visited the site periodically with the authority to make safety suggestions to the contractors and their employees. Despite this evidence of participation, the court did not direct that Edison should be found "in charge of" the work as a matter of law but instead remanded the case for a new trial. The court stated that whether the particular activities in a specific case were such that an owner could be deemed to "have been in charge" was a question of

fact for the jury to determine. *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316, 321, 211 N.E.2d 247, 251.

An argument similar to that advanced by plaintiff was before the court in *Clements v. Schless Construction Co.* (1972), 8 Ill.App.3d 291, 296, 290 N.E.2d 21, 25. In that case, plaintiff contended that the question of whether the defendant was "in charge of the work" should not have been submitted to the jury because the evidence clearly showed that defendant was in charge. The court stated:

> "Acceptance of Plaintiff's theory in this case would, in essence, require holding that the liability of a general contractor is absolute and nondelegable. We do not believe that this principle can be supported by any authority under the Structural Work Act \* \* \*."

In view of the foregoing, we hold that the question of whether defendant was "in charge of" the work was properly submitted to the jury and its verdict in favor of defendant was not against the manifest weight of the evidence.

Plaintiff next contends that it was prejudicial error for the trial court to give an instruction to the jury which used the phrase "direct cause" instead of "proximate cause." The instruction to which he objects states, in pertinent part:

> "Fourth, that the wilful violation by the defendant in the placement of the ladder was the *direct* cause of the damages claimed by the plaintiff \* \* \*." (Emphasis supplied.)

Plaintiff argues that this instruction made a significant and material change in his burden of proof under the Structural Work Act.

In *McCormack v. Haan* (1961), 30 Ill.App.2d 311, 314-15, 174 N.E.2d 206, 208, the court stated:

> "The trend of judicial opinion reveals a reluctance to reverse a case on the ground of technical errors in jury instructions; hence, courts have reiterated that the instructions will be considered as a whole and *where the jury has not been misled and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal.*" (Emphasis supplied.)

We have reviewed the instructions as a whole and find that the jury was not misled. Based upon this review, we find that the jury was sufficiently informed on the issues involved.

The judgment of the circuit court is affirmed.

Affirmed.

ADESKO, P. J., and BURMAN, J., concur.