**WALDRIP et al. v. LIBERTY MUT. INS. CO.**

**Civ. No. 3085.**

United States District Court,
W. D. Louisiana, Shreveport Division.
May 18, 1951.

Booth, Lockard & Jack, Shreveport, La., for plaintiffs.

Jackson, Mayer & Kennedy, Shreveport, La., for defendant.

PORTERIE, District Judge.

One of the main points advanced by movant, after the trial of the case is all over, is a surprise to the Court. The point is that the plaintiffs failed to allege and prove that their deceased children were not survived by wives or children. No motion of any kind or character was filed by the defendant company, except this late one at the conclusion of the case.

We tried the case and, at its conclusion, our mind was soaked with the fact that the two boys who were killed in the car collision had never been married. We know at this very moment, as a fact established beyond a reasonable doubt, that neither one of the two boys ever married. So, we are now faced with a motion of this character based on an alleged technicality of the law and we are requested, after trial had, to set aside the whole suit.

### A.

We believe that the fact was pleaded and then established by sufficient proof.

(a) Paragraph 4 of the complaint reads as follows: "Complainants, Robert L. Waldrip and Eula Mae Jennings, both allege that they were previously married and that of this union a son was born on August 19, 1931, named William Leon Waldrip and that this son was a minor on the date of the tragedy hereinafter mentioned, being then almost 19 years of age."

(b) Paragraph 5 of the complaint reads as follows: "Complainants, Robert L. Waldrip and Eula Mae Jennings, show that they were divorced some years ago and that the *custody of their son,* the said William Leon Waldrip, was given to complainant Eula Mae Jennings but show that the *boy*

*stayed alternately with his Mother and with his Father and was on terms of intimacy, love and affection with both parents and was, in turn, esteemed and beloved by them, during all the period up to and including the date of his death."* (Emphasis ours).

(c) Paragraph 6 of the complaint reads as follows: "Complainants, Lemuel J. Green and May Foster Waldrip, show that they were married in Big Sandy, Texas in the year 1930 and of this union there were born to them two sons, namely, Bobby Ray Green, on January 28, 1932, and Doyce Gene Green, born on November 14, 1933."

(d) Paragraph 7 of the complaint reads as follows: "That subsequent to the birth of these children, complainants, Lemuel J. Green and May Foster Waldrip, were divorced and custody awarded to May Foster Waldrip, but that *the children resided in part with both parents after the divorce,* and were beloved and esteemed by the children and, *in turn, both parents loved and cherished the children to the date of their injury and death hereinafter set out."* (Emphasis ours).

We believe that in the face of these four allegations, connected with a prayer seeking judgment under Article 2315, Civil Code wherein the plaintiffs are seeking judgment to the clear exclusion of any surviving wives or children, there is alleged in sum total the equivalent of the direct allegation that there are no wives or children of these two deceased boys.

### B.

Then, under the above allegations, we believe that the real and legally sufficient facts are established in the record of the case:

· For about two days, the teachers, neighbors, friends, and parents of the two boys took the witness stand and testified to scores of circumstances, if not hundreds, which proved indirectly and circumstantially that neither had ever married. The teachers said both were at school in their classes at the time of the accident and that the two boys were alternately living with their respective fathers and mothers. The fathers and the mothers and many of the witnesses attested to the activity and conduct of each boy until the time of his death and no possible intimation occurred that either one of them had been married or had children. We particularly recall one gentleman who indicated his going out fishing and taking trips in the woods with one of the boys and description was given as to the manner of leaving or going out, which would exclude the possibility of their having a separate home, a wife, or children.

· And, finally and conclusively, this Court is faced with the fact that, if it were not so, the defendant would long ago have obtained an affidavit as to the marriages and as to the children, have presented it to the Court, and a new trial would then be ordered.

■ So, in our conscience, that is the way the case stands; the fact is presented not only by the preponderance of the evidence, but is established beyond a reasonable doubt: that neither boy ever was married or had any children.

So, we find the necessities of the law to have been followed and, consequently, the motions are denied and overruled.

But the motion of the defendant urges us to inquire further and say that, even though the fact be clearly proved, we should ignore the fact and allow the defendant at least a new trial, just because there was not in black and white, typed out in the complaint, the fact of the boys never having been married and, consequently, having no issue.

The brief supporting the motion says that the law of Louisiana is such. We do not think so.

In the case of Smith v. Monroe Grocery Co., La.App., 171 So. 167, the defendant made a serious move at the very beginning of the case: An exception (of Louisiana state character) to the jurisdiction ratione personae was filed, followed by defendant's objection to the introduction of any testimony in favor of plaintiffs at the very beginning of the case, with the objection made permanent during the trial.

· In the instant case, as previously noted, no exception was made at any time, except

after the case was fully completed and in a motion for a new trial.

No motion was made by the defendant before us attacking the capacity to sue of the plaintiffs. We believe such objection should be made in limine litis and in the face of our knowledge that the objection is not supported by the fact or facts, how can the good conscience of a judge fail to direct the refusal of a new trial?

So, this Smith v. Monroe Grocery Co. case, supra, does not satisfy us.

Movant has referred us to the case of Horrell v. Gulf & Valley Cotton Oil Company, Inc., 15 La.App. 603, 131 So. 709. In that case, when up for trial and upon plaintiffs' first witness being questioned, objection was made to the introduction of any evidence on the ground that the petition did not negative the existence of a wife and child, or children, of decedent. The trial judge, in his discretion, permitted amendment to be made by plaintiffs and proof was made by plaintiffs upsetting the contention of the defendant. The defendant in the instant case either knew or did not know of the point in the beginning of the case. If it did know of the point that could be urged, it did not make it because it knew the two boys had never married and had no children. It decided to make a gamble later of the technical point. If the defendant did not know of the legal point that might be made at the beginning of the case, but became aware of it later, perhaps after trial, it is making the technical point as a gamble just the same.

In either instance, and particularly under this Horrell case now discussed, the defendant is too late with its objection.

The defendant refers us also to the case of Blackburn v. Louisiana Ry. & Navigation Co., 128 La. 319, 54 So. 865. This case fails again to help the defendant. The discretion of the trial court was brought into play at the very beginning of the case, because the defendant made the point and objected at the very beginning. The judge, of course, permitted the amendment and allowed the direct evidence to support the amendment. Nothing of this frankness was shown by the defendant in this case.

We are next referred to the case of Harris v. Lumbermen's Mutual Casualty Co., La.App., 48 So.2d 728. In that case we find again that the point was made initially in the state court through an exception of no cause or right of action. The district court sustained the exception and dismissed plaintiff's suit, which on appeal was affirmed. Again we have the difference between the cited case and the instant case in that the point was raised by the defendant in limine litis, and not, as in the instant case, after a full and complete trial.

If investigation be made and thought be given to the number of cases mentioned in the body of the above cases we have just discussed, it will be determined that in each case no one slept on his rights. No case has been offered us by the defendant in its brief, nor have we found any, where the record established that the plaintiffs had never married and had no issue, wherein defendant's point, so lately urged, was sustained.

So, the motion for a new trial must be overruled and denied, even after the consideration of this technical point advanced by the defendant.

Moreover, in addition to the above points, which we think should be all sufficient, there is the argument for the plaintiffs that under Rule 9 of the Federal Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A., under (a) Capacity, we find the language: "* * * When a party desires to raise an issue as to the * * * capacity of any party to sue * * * he shall do so by *specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

It was the defendant's duty, if it knew or thought it to be true, to make "specific negative averment". The retort of the defendant might be that the matter of pleading the point under Article 2315 of the Louisiana Civil Code is one of substantive law and not procedural in character. We doubt—entering this twilight zone of what is substantive or procedural—the point could be substantive. All of Article 2315 is substantive law as such; that is,

that a right of action is given to some one; but as to the use thereof, is it not a matter of simple pleading? Plaintiffs, in their capacities respectively as father or mother, sue under Article 2315; it then follows by the very provisions of the Article that there is then and thereby alleged the absence of marriage and of children.

And, in concluding this point, which, as we have before indicated, is purely cumulative and not necessary to our ruling made first-above, the jurisprudence of Louisiana has indicated by the cases above analyzed that the allegation in the *pleadings* is, after all, *pleadings*.

■ Then, there is a peculiarity in this case which furnishes another additional decisive point of a cumulative character in guiding us to a refusal of a new trial. That point is that it first appeared to the Court (we had a pre-trial discussion in chambers) that there was to be a full trial on the issue of liability, but at the very beginning of the trial the attorney for the defendant said: "Defendant admits liability to the plaintiffs." This admission, after having remained silent on the point of pleading so lately urged, precludes the necessity of their being any proof on the part of plaintiff that neither was ever married or had any children. The trial was then had purely and simply on the point of amount of the awards; but, in the full and elaborate proof of this point, there entered into the record full proof of no marriage and no children. So, we again overrule and deny the motion for a new trial on either one or both of the above last two points: (1) The defendant failed to follow the provisions of Rule 9 and is now precluded; and, (2) Defendant admitted liability to the plaintiffs and is now precluded.

There are other points offered by the defendant in its motion for a new trial:

■ (x) We do not think we erred in permitting Mr. White, Surety Insurance Commissioner, to appear in person and give expert evidence as to amount of coverage of the insurance contract which had been, by mutual consent, placed in the record. The Louisiana law, Act No. 195 of 1948, § 14.45, LSA–RS 22:655, permits the direct action of the insurer. At the pre-trial

conference, there was want of agreement by stipulation as to what the policy covered. We feel sure that an examination of the complex provisions of the policy will reveal that it was competent for the Court to profit from the expert evidence of Mr. White.

■ (y) We do not think we erred in suggesting to the jury that the jurors make notes of the various amounts of damages which had been put by plaintiffs' counsel on the black board during the course of the trial. An inspection of the carefully guarded direction given by the Court will show that defendant was not harmed by this nor prejudiced by it.

(z) We believe that a reading of the carefully worded charge to the jury will show no error by us when we:

a) Instructed the jury that the coverage afforded by the contract of insurance involved was $50,000 for any one person injured or killed and a total of $150,000 for any one accident.

b) Failed to advise and instruct the jury that the maximum insurance involved was the sum of $10,000 as requested in defendant's special request No. 3.

c) Instructed the jury that there were five claims involved.

d) Furnished the jury with written forms of possible verdicts.

Then we come to the second point stressed by the defendant:

"That the verdicts returned by the jury were unreasonable and unconscionable and were the result of emotion and prejudice and not the result of mature, reasonable deliberation."

As we stated at the time of the argument on the motion by defendant, we were of the opinion at the time of the rendition of the verdict that the awards herein were not excessive; we are of the same view at this time, except for the reductions to be noted below.

The two boys who were killed and the one boy who miraculously escaped death and whose interest has been represented by his mother, were exceptional young men. They were just of sufficient maturity to have developed bonds of close intimacy

with their parents. They were to a degree matured personalities, yet still the big boys of their parents. There was close care, warm love, and pleasurable association between these parents and these boys. The case, we thought, presented an exceptionally edifying relation. The jury of twelve men heard the facts, were given what we thought the correct law and we cannot see that the verdicts were excessive—not by any means.

However, in the case of the award of $35,000 to Eula Mae Jennings for her losses on account of the death of her son, William, we find that the prayer is "in the principal sum of $26,422.50". The verdict of the jury must be reduced to this amount of the petition.

Also in the case of Lemuel J. Green, where the jury made an award of $35,000 on account of the death of Green's son, Doyce Gene Green, we find that the petition is "in the principal sum of $25,000". The verdict of the jury will have to be reduced to that amount.

Our attention has been called to the following paragraph of the prayer: "Complainants further pray that if it should appear that an individual complainant is suing for an item or items or sums properly to be sued for by another complainant, then in that event the latter should be permitted to recover same as specifically prayed for".

Argument is then made by the plaintiffs that the two amounts above reduced should be allowed. The manner in which the jury made its awards (making a gross award, without subdivision for expenses of illness, etc.) prevents the above-quoted language of the prayer of the complaint from having its intended remedying effect.

Argumentatively and logically, since we have ruled that no new trial is to be granted, it follows that defendant's motion for judgment notwithstanding the verdict must fall likewise. In this particular case, there is no presentment of contentions making the motion for judgment notwithstanding verdict have any reasons that are not encompassed and made use of by the alternative motion for a new trial. We cannot see any point to cause the defendant to have a verdict in its favor.

Accordingly:

It is ordered, adjudged, and decreed that defendant's motion for judgment notwithstanding verdict and alternative motion for a new trial are both overruled and denied.

It is further ordered, adjudged, and decreed that, in the judgment to be presented for signature to the Court, the awards as made by the jury be placed in the judgment to be signed by the Court, with the exception that the award to Mrs. Eula Mae Jennings be in the reduced sum of $26,-422.50, and that of Lemuel J. Green be in the reduced sum of $25,000.