Harry BAIL, Plaintiff-Appellee,

v.

CUNNINGHAM BROTHERS, INC., a Wisconsin Corporation, Defendant-Appellant.

No. 18746.

United States Court of Appeals, Seventh Circuit.

Oct. 5, 1971.

Rehearing Denied Oct. 22, 1971.

Jack E. Horsley, Donald E. Castles, Mattoon, Ill., Richard F. Record, Jr., Craig & Craig, Mattoon, Ill., for Cunningham Brothers, Inc., a Wisconsin Corporation, defendant-appellant.

Leonard T. Flynn, Champaign, Ill., of Franklin, Flynn & Palmer, Champaign, Ill., for Harry Bail, plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

Plaintiff Harry Bail brought this diversity action in the district court seeking to recover damages for personal injuries sustained as the result of his falling when a scaffold upon which he was working collapsed. Defendant Cunningham Brothers, Inc., a Wisconsin corporation, was the general contractor at the particular construction site, while plaintiff was employed as a brick mason by Davidson Masonry and Restoration, Inc., a subcontractor. The action was brought under the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, § 60 et seq. (1969), which imposes liability, under certain circumstances, upon contractors having charge of the overall construction site. A jury rendered a verdict for the plaintiff in the amount of $150,000.

Cunningham's first contentions on this appeal arise from the district court's denial of its motions for a directed verdict, for a judgment notwithstanding the verdict and for a new trial. Cunningham contends that Bail failed to make a prima facie case on the necessary elements of this cause of action. Specifically, it is argued that he failed to prove the essential element that defendant had control or the right of control over the erection of the platform which collapsed. It is also urged that the statute upon which liability is predicated requires a wilful violation thereof, which was not proven. For these reasons, defendant asks this court to reverse the court below and enter judgment notwithstanding the verdict on its behalf.

The Illinois Structural Work Act, commonly known as the Scaffold Act, imposes liability for injury upon any " * * * contractor * * * having charge of the erection * * * of any building." Ill.Rev.Stat. ch. 48, § 69 (1969). We note first that the Illinois courts have broadly construed the language of the statute. In Larson v. Commonwealth Edison Co., 33 Ill.2d 316, 321–322, 211 N.Ed.2d 247, 251 (1965), the Illinois Supreme Court stated:

"While it may be conceded that some of the decisions in this jurisdiction in-

volving the Scaffold Act appear to have equated 'having charge' with 'supervision and control' in varying degrees, it is our opinion the language of the statute, and the legislative intent it reflects, do not permit the conclusion that the terms are the inflexible and unbending legal equivalent of the other. The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in People v. Gould, 345 Ill. 288, 323, 178 N.E. 133, 148: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure."

Bearing in mind the standard laid down in Pedrick v. Peoria & E. R. R., 37 Ill.2d 494, 229 N.E.2d 504 (1967), that verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand, we now turn to the factual situation as reflected by the testimony.

The following has ample evidentiary support. Cunningham as the general contractor had entered into a contract with Moore Business Forms, Inc. to build the building in question at Charleston, Illinois. Included in the contract were provisions requiring Cunningham to take all necessary precautions for the safety of employees on the work; to comply with all federal, state and municipal safety laws; to erect and maintain safeguards for the protection of workmen; to post safety warning signs; to designate a responsible member of its company whose duty was to be the prevention of accidents and to keep on the job a competent superintendent during the progress of the work. One Milton Relinge was hired by Cunningham as general superintendent. Cunningham had the right to stop the work of a subcontractor as a part of job coordination and also for nonconformance with the specifications and plans and had the general duty to inspect the work as it went along. While Cunningham retained certain portions of the work for itself, it subcontracted much of the work but retained general supervision of the job. One of the retained items of work was the iron work. This included the erection of metal roof joists.

Relinge made frequent telephone calls during working and non-working hours to Glenn Davidson, apparently the principal owner of the Davidson Company, as to the course of work during the carrying out of the subcontract.

Prior to the accident, Davidson had been told to "scaffold the wall and get busy." The reference was to the northern part of the west bay of the building, and Davidson employees did place planking for scaffold use on top of the joists in the bay in question. Cunningham apparently predicates in part its lack of liability on the fact that Davidson employees had not been ordered to put the planking on the bar joists and that there was no instruction to this effect from

any Cunningham employee. However, the planking had been there for two or three days prior to the accident. At the time the planking was on the joists, the second and third bar joists had not been welded to the anchor plates in the west wall, and at the time of the occurrence these joists were torn from the west wall and fell into the bay with other building materials. Also, there was testimony that the joists had not been bridged together, that this made them unstable and that the lack of bridging contributed to the fall of the scaffolding. Relinge was, as far as we can ascertain from the record, present at the job site during the two or three days prior to the accident and specifically was on the job site on the morning of the occurrence.

Cunningham attempted to explain away the general power of control as being confined to coordinating the work of subcontractors. This we find to be an unduly narrowing interpretation of the overall power of control lodged in the general contractor under the building contract in question.

Without detailing all of the evidence but only the above highlights, we find it sufficient to establish a prima facie case under the broad language of the statute. The right to control is, it seems to us, particularly evident. The issue, therefore, was properly for the jury to decide. Kobus v. Formfit Co., 35 Ill.2d 533, 538, 221 N.E.2d 633 (1966). Therefore, in our opinion, it would have been improper for the court below either to have directed a verdict or to have entered a judgment n. o. v.

■ With regard to Cunningham's contention that there is no liability under the Scaffold Act unless a "wilful" violation is shown, we only need note that Illinois decisions recognize that liability may exist in situations where a defendant could have discovered dangerous conditions by the exercise of reasonable care. Pantaleo v. Gamm, 106 Ill.App.2d 116, 125, 245 N.E.2d 618 (1969). As was stated in Dinschel v. United States Gypsum Co., 83 Ill.App. 2d 466, 476, 228 N.E.2d 106, 112 (1967):

"All persons in 'charge' of the work are liable not only when the dangerous conditions are known to them, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to them. Kennerly v. Shell Oil Co., 13 Ill.2d 431, 150 N.E.2d 134. The evidence is clear in the case at bar that the scaffold was defective in willful violation of the Act. The Statute puts absolute and unconditional liability on the person or persons who have charge of the work wherein a scaffold or hoist is used."

■ Once a jury makes a determination that a defendant is "in charge of" the construction, it is for them to decide whether the defendant either knew of the dangerous condition or by exercising reasonable care should have discovered it. As with the prior issue, there was ample evidence from which the jury could have concluded that Cunningham should have been aware of the dangerous condition.

■ Defendant's claim that the district judge should have granted a new trial is based on the proposition that the jury's verdict was against the manifest weight of the evidence not only as to the issues previously dealt with in this opinion but also because there was no showing of proximate causal connection between any act or omission by Cunningham and the occurrence.

This court has stated that generally the granting or denying of a motion for a new trial lies within the sound discretion of the trial court and ordinarily is not subject to review. Shupe v. New York Central System, 339 F.2d 998 (7th Cir.), cert. denied, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965). From our review of the evidence we do not find any abuse of discretion.

■ However, the proximate cause issue is also involved in a claim of error with regard to the refusal to instruct the jury.

The court gave the following instruction to the jury:

"More than one person may be found to have been guilty of wrongful conduct causing injury under the Scaffolding Act. If you believe that the Defendant violated the provisions of the Scaffolding Act and that such caused injury to the Plaintiff, it is not a defense that some third person may have also been guilty of wrongful conduct."

Defendant requested that the court add to this instruction the following language, " * * * unless such wrongful conduct of some third person was the sole cause of the injury."

The proposed addition seemingly disregards the second sentence, which required the jury to determine that defendant's conduct at least partially caused the injury.

It is true that the instruction as given did not amend the "cause" by inserting "proximately," but this omission apparently did not weigh heavily in the mind of defendant inasmuch as the proffered addition also did not contain the qualifying word "proximate."

Furthermore, in another instruction the jury was told that plaintiff had the burden of proving that defendant's conduct was the proximate cause of the injuries:

"The Plaintiff has the burden of proving each of the following propositions:

That the Defendant acted or failed to act in one of the ways claimed by the Plaintiff as stated to you in these instructions and that in so acting or failing to act the Defendant was guilty of violating the Structural Work Act of the State of Illinois.

That the Plaintiff was injured.

That the conduct of the Defendant was a proximate cause of the injuries to the Plaintiff.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the Plaintiff, but, if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the Defendant."

The jury was also given a proximate cause instruction by the court:

"Proximate cause is the act or omission to act that immediately causes or fails to prevent the occurrence complained of. It is the cause which directly and in continuous sequence produces the result and without which such result would not have occurred."

Clearly, under the instruction given by the court to which defendant desired to make an addition, if the defendant's violation of the Act caused injury to the plaintiff, no conduct of any third person could have been "the sole cause of the injury."

We fail to see how the jury could have been misled as to the necessity that, in order to impose liability, the triers of fact must initially determine that Cunningham's acts or omissions proximately caused the injuries.

■ As an additional argument in behalf of its contention that a new trial should have been granted, defendant states that the size of the verdict is indicative that the jury's deliberations and conclusions were the product of passion and prejudice.

Testimony presented at trial indicated that plaintiff suffered the following injuries as a result of his fall: compound fracture of nose, head laceration, slight concussion, compound fracture of left ankle, fracture of left foot and fracture of right ankle. Surgery was required to insert a pin in the left foot and a screw and a Rush nail in the right ankle. In addition, there was testimony that plaintiff would suffer from traumatic arthritis at the fracture sites which would cause pain in the future. Similarly, calcification forming in the areas of injury would produce pain and limitation of motion in the future. Further, testimony

revealed that there is permanent limitation of plantar and dorsal flexion in both feet, causing plaintiff to suffer pain when walking, to walk with a limp and to tire easily. These limitations, according to the medical witnesses, would cause plaintiff to be unstable as to body balance, thus keeping him from working effectively in the future as a brick mason. There was also testimony that plaintiff suffered an injury to his right arm causing permanent loss of sensation in his ring finger and little finger.

There was also a stipulation as to medical expenses and the testimony was that at the time of Bail's injuries he was working at $5.30 per hour and that his employment at the time of trial consisted of being a janitor for a school district with wages of $1.75 an hour for five hours work per day. Bail had been a bricklayer, with the exception of a short period of service, since 1940. He was 52 years of age at the time of the accident and at the time of the trial had a life expectancy of approximately nineteen years.

Cunningham argues that perhaps the most significant revelation of the passion and prejudice of the jury was the fact that the verdict was half again larger than the amount asked for in closing argument by the plaintiff's attorney.

It is true that Bail's counsel in his blackboard talk stated "if you, add up everything that I have you get $99,-548.90." However, as will be noted hereinafter, counsel had unsuccessfully attempted to amend the prayer of his complaint. He obviously and very properly must have felt himself circumscribed in presenting his case to the jury by the ad damnum figure of $100,000. To have argued to the jury in a blackboard talk that the damages were in the area of $150,000 to $250,000 would undoubtedly have precipitated a donnybrook which in ultimate effect would probably have been prejudicial to his client's case if the judge had indicated that he was engaging in improper conduct under the circumstances.

While it is no doubt somewhat unusual for a jury to bring in a verdict higher than the amount argued by counsel or the total amount indicated by expert witnesses, nevertheless it is not unheard of and we do not think that fact standing alone is any indication of passion and prejudice. Certainly under these circumstances the fact that counsel confined his argument to the limitations set by the court does not necessarily indicate that the amount finally arrived at by the jury was such a result.

Considering all of the factors reflecting upon the amount of monetary loss to Bail, while the amount awarded by the jury is not insignificant, we are unable to say that the size of the verdict is indicative that the jury's deliberations and conclusions were the product of passion and prejudice.

■ The final contention raised by defendant on this appeal is that the judgment against defendant should be remitted from $135,000 to $85,000.

Plaintiff's original complaint sought damages in the amount of $100,000. On the morning the trial was to begin, plaintiff presented a motion to amend the complaint requesting that the ad damnum clause in the complaint against defendant be increased from $100,000 to $250,000. The district judge denied this motion " * * * for the reason that the case is at issue, it is set for trial this date, and the defendant was not given notice of the filing of the motion."

The jury notwithstanding the complaint-contained limitation of $100,000 returned a verdict for the higher figure of $150,000. In a post-trial motion Bail sought and was granted leave to amend the complaint by increasing the ad damnum clause to $150,000. Bail had received $15,000 from another defendant originally named in the complaint in return for "a covenant not to pursue." This payment had been set off, leaving the final judgment of $135,000. It has been said that the office of the ad damnum in a pleading is to fix the amount beyond which a party may not recover

on the trial of his action. Gable v. Pathfinder Irrigation District, 159 Neb. 778, 68 N.W.2d 500, 506 (1955).[1] However, an examination of the cases reveals that the rule thus enunciated, if indeed it still be a rule, has flexibility to the virtual point of nonexistence. Thus, in *Gable* the court pointed out that there was also a general rule that amendment may be made to a pleading which did not change the issues or affect the quantum of proof as to a material fact and that no good reason was apparent for not applying this privilege of amendment to the ad damnum clause. *Id.* at 506.

In the case before us, even though it is a diversity case, a matter of procedure is involved and governed, therefore, entirely by the federal rules. Riggs, Ferris & Geer v. Lillibridge, 316 F.2d 60, 62 (2d Cir. 1963).

Rule 54(c), Fed.R.Civ.P., provides in part as follows:

"Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

There is substantial authority for the proposition that pursuant to Rule 54(c) a claimant may be awarded damages in excess of those demanded in his pleadings. 3 Barron & Holtzoff, Federal Practice and Procedure § 1194, at 38 (Wright ed. 1958); Stewart v. Banks, 397 F.2d 798 (5th Cir.), cert. denied sub nom., Sims v. Banks, 393 U.S. 801, 89 S.Ct. 41, 21 L.Ed.2d 85 (1968); Troutman v. Modlin, 353 F.2d 382, 384-385 (8th Cir. 1965); and Riggs, Ferris & Geer v. Lillibridge, *supra*, 316 F.2d at 62-63.

Cunningham, however, contends that the authority is not all one way and in its reply brief points out plaintiff had made no acknowledgment or refutation of the cases on which Cunningham relied. Waldrip v. Liberty Mut. Ins. Co., 11 F.R.D. 426 (W.D.La.1951) and Stein v. Green, 64 F.Supp. 8 (W.D.Pa.1946).

While in its original brief Cunningham refers to these cases as being well reasoned opinions, we can find no real support in either case for the position taken by Cunningham that where jury verdicts are in excess of the amount sought in the complaint, the verdicts are to be reduced to the amount requested in the complaint.

In *Stein,* recovery was sought of a down payment on the sale of a power shovel. The court instructing the jury indicated that the recovery would be limited to the amount of the down payment together with the amount paid for freight plus interest for delay in payment. The verdict apparently was for a greater amount than the total amount specified by the court as the proper limitation on recovery. In attempting to support the verdict, the plaintiff endeavored to amend his complaint by asserting a claim for punitive damages by reason of fraud. This petition was denied, and it would seem was properly denied, as the attempted amendment would have introduced an entirely new claim which had not been litigated.

*Waldrip,* on the other hand, is factually more apposite here. However, as pointed out in 3 Barron & Holtzoff, Federal Practice and Procedure § 1194, at 38-39 (Wright ed. 1958), the opinion " * * * apparently overlooks Rule 54(c) and cannot be regarded as authoritative." We also note that there is no reasoning in the *Waldrip* case but merely a flat statement that the verdict of the jury must be reduced to the amount of the petition. There is no indication in *Waldrip* that there was a motion to amend the ad damnum clause.

Cunningham also draws our attention to the case of Wyman v. Morone, 33 A. D.2d 168, 306 N.Y.S.2d 115 (1969), to the effect that under New York law the granting of the motion to increase the amount sued for, after a jury has rendered its verdict, is an abuse of discretion. We, of course, in view of Rule 54 (c) are not in any way bound by the in-

---

1. Overruled in part on another issue in Cover v. Platte Valley Public Power & Irr. Dist., 162 Neb. 146, 75 N.W.2d 631, 671 (1956).

terpretation of this lower court of New York as to the law of that state but do observe that there apparently was some significance attached to the extended delay in moving to amend and in any event feel that the dissenting opinion in *Wyman* swims with the main current of judicial thinking in this particular area as opposed to the contrary movement of the majority opinion.

The difficulty, if any there be, posed here, however, lies in the fact that Bail attempted to amend the ad damnum clause in advance of trial and the right of amendment was denied by the court. In this respect the case would seem to be one of first impression as no case involving this exact factual situation has been brought to our attention. It appears to us that the motion to amend, even though on the morning of the trial, should have been granted. It not having been granted, our inquiry must be as to whether the normal rule prevailing under 54(c) should be varied. In our opinion, it should not be.

On oral argument, inquiry was directed to counsel for Cunningham as to how the conduct of the trial would have differed if the pretrial motion to amend had been granted. The thought was ventured that the attorneys might have tried the case differently, that they might have argued damages to the jury (which subject they conspicuously avoided in final argument) or they might have cross-examined more extensively. With hindsight, they may well think that they should have argued damages even if no post-trial amendment were to be permitted and the limitation on recovery were left at $100,000. In essence, however, we cannot see that the quantum of proof as to any material fact varied or that any change of issues resulted, or would have resulted, from an amendment of the ad damnum clause. Counsel competently and vigorously defended on the theory of no liability whatsoever, and we can find no basis for an assumption that $100,000 is such an insignificant amount that counsel somehow would try harder if they knew that the exposure might be $250,000.

No doubt if the ad damnum had sought some insignificant amount such as $1,-000, the case would not have received the attention from trial counsel that it did. In the case before us, however, defense counsel were never confronted with an insignificant amount.

It perhaps is unfortunate that the district court did not permit the amendment as requested in advance of trial so as to eliminate the claim that the defendant somehow was prejudiced in relying on this. Finding, however, no real prejudice we will follow the rule generally prevailing to the effect that even though the party was not successful in demanding such relief in his pleadings, he was entitled thereto under the evidence. At least the jury thought that he was so entitled, and we find no basis for upsetting their determination irrespective of whether we would have reached this exact amount in assessing damages. Further, the district court who heard the evidence on a front line basis was satisfied that the amendment should be allowed on a post-trial motion.

Although Bail's counsel under the constraint of the court's ruling did confine his final argument to an amount within the unamended ad damnum clause, it is not entirely unreasonable to assume that he and his client would have been well satisfied with a verdict of $100,000 and, indeed, it does not stretch the imagination too far to conceive that a settlement could have been arrived at for less than that figure if the general practical pattern of settlements in personal injury cases had had any application here. Nevertheless, the case was not settled and inasmuch as the damages cannot be shown to be excessive, nor to have been dictated by passion and prejudice, the verdict will stand. While Cunningham finds some source of complaint in the fact that plaintiff's counsel himself argued less than $100,000 and while it may not now be much solace to Cunningham, nevertheless there was the trial advantage to the defense that plaintiff was precluded from arguing a larger sum.

What we have had to say with regard to the ad damnum clause is indicative of the anachronistic character of the clause. Indeed, there is a well publicized school of thought that it should be done away with altogether. *See The Ad Damnum Clause, The Problems and Solution,* a monograph published by the Defense Research Institute, Inc. (1965). The monograph points out that three states in varying degrees have done away with the ad damnum clause and some federal courts by local rule have dispensed with this clause. It is true that in some suits it is necessary to allege a jurisdictional amount, but ordinarily this is far less than the ad damnum prayer and can be gleaned in most instances from the pleadings and discovery procedures.

As a matter of fact in the case before us it appears from the record that the jury was in no way aware of the amount of the ad damnum in the complaint and, therefore, clearly their verdict did not reflect a conscious arrival at a figure in excess of the ad damnum.

For the reasons set forth in this opinion we find no reversible error and, therefore, the judgment of the district court in all respects is affirmed.

Affirmed.