Reuben Carlson, Plaintiff-Appellant, v. Metropolitan Sanitary District of Greater Chicago, Defendant-Third Party Plaintiff-Appellee, v. J. L. Simmons Company, Inc., a Corporation, Third-Party Defendant.

Gen. No. 50,094.

First District, Second Division.

November 2, 1965.

Leonard M. Ring and Brusslan, both of Chicago (Leonard M. Ring, of counsel), for appellant.

George A. Lane and Sidney B. Baker, of Chicago (Herbert C. Loth, Jr., and Kenneth A. Knutson, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

█ Plaintiff appeals from a summary judgment against him in an action to recover damages for personal injuries occasioned by an alleged wilful violation of the Illinois Structural Work Act, commonly called the Scaffold Act (Ill Rev Stats, 1963, c 48, Pars 60–69). The court found that there was no just reason to delay enforcement of or appeal from the judgment. The facts presented are those well pleaded. The complaint alleges that on March 2, 1960, the defendant, the Metropolitan Sanitary District of Greater Chicago (hereinafter referred to as the defendant), was in the process of constructing a building in Skokie, Illinois; that plaintiff, Reuben Carlson, was an employee of J. L. Simmons Company, Inc. (hereinafter referred to as Simmons), a contractor engaged to perform some of the work in the construction of the building; that plaintiff was performing his work upon a scaffold constructed upon the premises by or on behalf of the defendant; that the defendant wilfully violated or wilfully failed to comply with the Structural Work Act, in that the scaffold upon which plaintiff was working was not safe and that as a proximate result thereof the scaffold fell causing plaintiff to sustain serious and permanent injuries. He asked judgment for $100,000.

Defendant's answer admitted ownership of the premises, but denied that it owed any duty to plaintiff under the Structural Work Act, and denied all other allegations of the complaint. The defendant filed a

third-party complaint against Simmons, plaintiff's employer, for indemnity, pursuant to a written agreement between defendant and Simmons. Defendant filed a motion for summary judgment in which it alleged that Simmons, plaintiff's employer, was an independent contractor and that defendant did not retain control nor was it "in charge" of Simmons during the course of its work. The motion was supported by affidavits of certain supervisory employees of Simmons and the affidavit of Leonard Magnusson, senior civil engineer for the defendant. The substance of these affidavits was that the defendant did not erect the scaffold in question and did not control or direct or take charge of the work done by Simmons. Plaintiff filed objections supported by the affidavit of plaintiff in which he stated that at least on one occasion he heard defendant's employee tell a Simmons' carpenter to scrape a form used in the work and saw such employee point to the area to be scraped. Plaintiff also filed the discovery deposition of Leonard Magnusson, an engineer employed by defendant. In his written objections filed in opposition to the motion for summary judgment, plaintiff noted that Magnusson in his deposition testified that he was "in complete charge of the supervision and the—seeing to it that these plans and specifications were followed"; that he (Magnusson had 8 employees working under him at the construction site; that all of these men were either engineers or assistant civil engineers or inspectors; that the defendant maintained a trailer at the site which was used by Magnusson and the men working under him as their site headquarters; that he met daily with Chambers, the job superintendent for Simmons, and that the purpose of these meetings was to arrange concrete pour and make general arrangements for the construction schedule.

According to his deposition, Magnusson determined when to pour concrete in certain areas on the construction project; when weather conditions were proper

for pouring and the rate of pour; that 60% of all the work on the project concerned the concrete pour; that all his dealings were with Chambers (Simmons' superintendent); that Chambers in turn would direct or deal with the foremen or superintendents of construction of the various subcontractors on the job; that the names of all contractors had to first be submitted to defendant's engineering department for approval and that it was necessary for such approval to be given in writing by defendant's chief engineer before Simmons could employ any subcontractors; that the inspection of the work was the function of the defendant's engineers and inspectors; that during the progress of the work, Simmons submitted to the defendant, force accounts, which showed the number of men employed on the job at different times and the work they performed. In addition to the field inspections, the defendant made prefield inspections of most of the material used in the course of construction. This was done by the defendant at the manufacturer's premises. Shop drawings had to be submitted by Simmons to the defendant's engineering department for approval as well as plans which specified the manner of installing or applying the material or equipment involved in the construction project. Mr. Magnusson further testified that the defendant's engineers or inspectors examined all forms used for the pour of concrete; that he gave Chambers directions about the cleaning of the forms and that the rate of pour of the concrete was given to Simmons by defendant engineering department and that the defendant's inspectors checked to see that the recommended rate was followed. In addition to the affidavit and deposition of Magnusson, plaintiff filed as an exhibit to Magnusson's deposition, the contract between defendant and Simmons, which consisted of 102 pages. It provided, among other things, that the work shall be executed under supervision of the chief engineer of defendant and his properly authorized agents; that the engineer, shall in all cases,

decide all questions of an engineering character which may arise relative to the execution of the work; that the contractor had to submit layouts and schedules of his proposed method of conducting the work to the engineer for approval; that the engineer had the right to reject any inadequate or unsafe procedural method (temporary) structures or equipment and that the engineer could disapprove and reject any of the same which to him seemed "unsafe for the work, . . . for the public or for any workmen, engineers and inspectors employed thereon." The contract further provided that before commencing work the contractor had to submit his proposed order of procedure to the engineer for approval; and further provided that the contractor was at all times to have present at the site a competent foreman, superintendent or other representative with authority to act for the contractor and execute the orders from the engineer; and who would see to it that the work was executed in accordance with the specifications and the orders of the engineer. It further provided that the contractor shall discharge, at the request of the engineer, any incompetent or unfaithful men in his employ.

The defendant points out that the contract is very detailed; that some of the provisions reserve certain rights to the defendant, as the right to inspect and accept or condemn all work, to require the contractor to discharge incompetent or unfaithful employees, etc.; and that the contractor place the responsibility of performing the contract, for taking safety precautions and for determining the manner and method of performing the work upon the contractor, but reserves the right of approval of such performances unto the defendant. The defendant concedes for the purposes of this appeal that its "right to control" can be found to exist in the contract but that actual control of the work is delegated to the contractor and was not, in fact, exercised by the defendant. Defendant says that the affidavits of Simmons' supervisory person-

335

nel and the depositions of the defendant's engineer show that the defendant inspected the work daily; that defendant's engineer met with Simmons' general superintendent, Chambers, each day to schedule concrete pours, make up estimates and progress payments; that there were a number of subcontractors, each of which had its own superintendent and foreman on the job, but that defendant never dealt with any one except Chambers; that defendant's office did not review any equipment of the contractor in the course of construction; that defendant's engineers and inspectors just checked the progress of the work and measured the excavations and saw that the plans and specifications were adhered to; that Chambers coordinated the work of the subcontractors; that defendant did not hire or fire any of the men; that defendant approved shop drawings prepared by the people who furnished the material to the contractor; that the contractor furnished all the equipment used on the job, including scaffolds and ladders; that defendant did not inspect any scaffolds on the job; that defendant's engineer never told any of Simmons' employees how to do their work; that defendant did not do any carrying out of the work to implement the plans and specifications; that defendant made no suggestions as to the manner that Simmons should use any equipment on the job; that if Simmons failed to use standard procedures, defendant's engineer was supposed to bring that to Simmons' attention but was not to remedy the failure himself; that defendant did not pay the wages of any one at Simmons; that the top man in the chain of command was Chambers and the workmen on the job were at the bottom; that at no time did defendant take charge of the work to be done by Simmons or in any way control or direct what was to be done on the job.

In urging reversal plaintiff asserts that one who retains the right of general supervision or authority over a construction project is deemed to be "in charge" of

the work under the Scaffold Act; that the term "having charge of," as used in the Act, and as it is commonly understood, is broader in scope than control and supervision and that it is not necessary to be "in charge" that a party have direct contact with the minutiae of detail involved in construction. Plaintiff maintains further that control over the manner and method authorized is but one of many factors to be considered in determining if a defendant is "in charge" and that it is the right to control, not the exercise of control, which should be considered.

■ Defendant says that the actual control of the manner and method of doing the work, not the mere right to control, is necessary for an owner to be a party "having charge of" the work under the Structural Work Act. The defendant in its contract retained the right to control the manner and method of doing the work and the trial judge not only equated "in charge" as used in the Scaffold Act with control over the manner and method of doing the work but also considered control over the manner and method of doing the work as synonymous with actual control over the minutiae of detail involved in a construction project. We agree with the plaintiff that this is not a proper test. In Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785, the court pointed out that all the construction work, including the bricklaying, assembling and construction of the scaffolds and other operations, was done by Marhoefer & Company and its employees under a contract with the railroad and that although the railroad architect and engineers made frequent inspections of the structural activities, there was no inspection of the scaffolds and ladders or other appliances at any time and they exercised no control over the manner in which the work was being done. On these facts the Supreme Court in Gannon held (p 323) that it was a question of fact whether the owner could be deemed to be in charge

of the construction within the meaning of the Act, and that it was the province of the jury, under proper instructions, to make that determination. See also Miller v. B. F. Goodrich Co., 295 F2d 667; Kiszkan v. Texas Co., 22 Ill2d 326, 175 NE2d 401; Blonar v. Inland Steel Co., 57 Ill App2d 99, 207 NE2d 124. Consistent with tenet of liberal construction expressed in Gannon and Kiszkan the courts have uniformly held that as long as there is evidence connecting the owner or any other person named in the Act, with the work, a jury question is presented. More than one person may contemporaneously be deemed "in charge" under the Act. Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551; Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785; Yankey v. Oscar Bohlin & Son, Inc., 37 Ill App2d 457, 186 NE2d 57; Palier v. Dreis & Krump Mfg. Co., 47 Ill App2d 334, 198 NE2d 521; Sleck v. Butler Bros., 53 Ill App2d 7, 202 NE2d 64. Under the trial court's construction in the instant case, in most instances, only the plaintiff's employer would come within the orbit of those "in charge of" the work, since almost always, the employer would be the one in control of the manner and method of performing the specific tasks involved. This construction of the Act would frustrate the legislative intent.

Larson v. Commonwealth Edison Co., 48 Ill App2d 349, 199 NE2d 265, affirmed a judgment for defendant-owner based on an instruction to the jury to the effect that the owner, to have had "charge of" the work must have retained "control and supervision of such work being performed" by the contractor. The defendant in the case at bar says that it turned over the responsibility for carrying out the construction of the project to Simmons, an independent contractor and that the defendant never thereafter assumed that responsibility (though it had the right to do so had it found that the contract was not being properly performed by

Simmons). The defendant says that all it did was watch the progress of the work to satisfy itself that the quality of the work done was in accordance with the agreement and that at no time did defendant take charge of the work to be done by Simmons or in any way direct or control what was to be done in the erection of the structure. Defendant insists that there was no genuine issue of fact as to actual control by the defendant and that the trial judge was right in entering a summary judgment for the defendant. Plaintiff agrees with the defendant that merely making inspections from time to time does not place one "in charge." In contrast to the rights reserved by the contract in Cannon v. U. S., 328 F2d 763, the defendant in the instant case retained control of the hiring and firing of the contractors' personnel and retained control over the method in which the work was to be carried on. Defendant points out that Magnusson, its chief engineer, did not give direct orders to the contractors' men on the job. Magnusson stated that workmen must take their orders from their own superintendent in accordance with union regulations. Magnusson dealt with Chambers (Simmons' superintendent) and he in turn dealt with his subordinates. While Chambers gave the orders to Simmons' men, Magnusson gave the orders to Chambers. Insofar as the overall project was concerned, Magnusson was at the top in the chain of command. Under defendant's theory of the law, all a person would have to do to escape liability thereunder is require that the contractor submit to him for approval, each item, detail or phase of the work. The contractor will, of course, fail to win approval unless and until he submits plans, methods, techniques and procedures which conform to the defendant's views; and if in these circumstances the contractor deviates from the preagreed method, the work will be stopped—and so will the pay. Under such a practice the defendant would not technically be telling the contractor how and what to do, but the

end result would be the same. In the one case the defendant tells the contractor what to do while in the other case the contractor obtains defendant's approval on how to do it. In either case the defendant decides and determines how the work is to be done.

On September 29, 1965, the Supreme Court reversed the judgment of the Appellate Court as to both defendants in Larson v. Commonwealth Edison Co., et al., Docket No. 38637, and remanded the cause to the Circuit Court for a new trial. In Larson, the Supreme Court points out that the principle controversy between plaintiff and defendant Edison is whether the trial court erred when, over plaintiff's objections, it instructed the jury that the plaintiff is not entitled to recovery for damages under the provisions of the Structural Work Act unless he has proven by a preponderance or greater weight of the evidence that the defendant had charge of the work *by retaining control and supervision of such work being performed by Paschen Contractors, Inc.* The Supreme Court said that there is no need for a definition of the statutory words, "having charge" and that the term is one of common usage and understanding and that further attempt at definition can only lead to confusion and error. The Supreme Court said that consistent with its beneficent purpose "of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." The court decided that the inclusion in the instructions of the words "by retaining supervision and control of the work" placed a greater burden on plaintiff than the law required and was improper. In the Larson case as in the instant case there

340

were a large number of contracts and contractors. The Supreme Court in the Larson case discussed the legal effect of the right of the owner to control the work. We quote:

"It may be conceded that Sargent, like an owner, must have some direct connection with the construction and alteration operations before it can be deemed to be in charge of the work, and thus subject to duty and liability under the act. But assuming that its contract with Edison, or perhaps the directions issued to Paschen pursuant to the 'purchase order,' gave Sargent the right to control the work, we believe it necessarily follows that such right, exercised or not, is sufficient to establish duty under the act.

"Even at common law retention of the right to control the work is sufficient to subject one to duty and tort responsibility, (see: Schwartz v. Gilmore, 45 Ill 455, 457; Best Manufacturing Co. v. Peoria Creamery Co., 307 Ill 238, 241–242; Hartley v. Red Ball Transit Co., 344 Ill 534, 539; Restatement of Torts, § 414 and comment; 57 CJS, Master & Servant, sec 602) and the retention of the right to control must carry with it the same duty and responsibility under the Scaffold Act. Otherwise, the absurd result would be that a statute designed to broaden the common-law duty and to give added protection, would be construed as imposing a lesser duty than the common law. Certainly it was not the legislative intent that those retaining the right to supervise or control the work could be freed from duty by doing nothing, for section 9 imposes liability for a wilful failure to comply with any of the provisions of the act, as well as wilful violation."

The defendant retained the right to control the manner and method of doing the work. Under the opinion of our

Supreme Court in the Larson case the defendant was "in charge" of the construction of the building or project.

The judgment is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with these views.

Judgment reversed and cause remanded with directions.

BRYANT and LYONS, JJ., concur.