(No. 48871.-)

LEONARD M. CROTHERS, Appellee, v. LA SALLE INSTITUTE, Appellant.

*Opinion filed Oct. 17, 1977.—Rehearing denied Nov. 23, 1977.*

DOOLEY, J., specially concurring.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, and Charles B. Lewis, of counsel), for appellant.

Morrill, Koutsky, Chuhak and Upton, of Chicago (Lawrence T. Stanner and William J. Harte, Ltd., of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The plaintiff, Leonard Crothers, was injured as the result of a fall from the roof of a gymnasium being constructed for the defendant owner, La Salle Institute, on the campus of Lewis College (now Lewis University) in Lockport, Illinois. Crothers' third amended complaint alleged he suffered the injury because La Salle had been negligent and had violated the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60-69). Crothers dropped the negligence count. The jury returned a verdict in the circuit court of Cook County for La Salle but the appellate court reversed. 40 Ill. App. 3d 984.

La Salle had engaged Paxton Construction Company as the general contractor for the construction, but at the time of the injury, July 27, 1967, there was no longer a general contractor. Due either to Paxton's bankruptcy or unsatisfactory performance—the record is not unequivocally clear—its services were terminated. (Brother Joel Damian, the legal equivalent of corporate secretary for La Salle, testified that La Salle removed Paxton, on the advice of the architect, for failure to perform satisfactory

service.) Subcontractors, including Crothers' employer, Norton & Sons Roofing, had been hired before Paxton's departure.

On the day of the injury Crothers was atop the roof installing insulation. He was working toward the edge of the roof with his back to it when he apparently misjudged his location, lost his balance and fell 35 feet to the concrete below.

Crothers testified that the day was windy—"very gusty"—and that the roof had been completed except for the installation of insulation and skylights. His orders, he said, came only from his foreman and never from the Christian Brothers, that is, the defendant, La Salle Institute. As he fell, he said, he grabbed for and pulled with him loose pieces of wood which were lying at the edge of the roof.

A construction safety advisor from the Illinois Department of Labor, called by the plaintiff, testified that the customary precautions for a flat roof are safety belts with lead lines, safety nets, secured ladders, and ropes strung around the edge, sometimes with streamers. One could also "extend weighted concrete," use "imbedded pins and uprights," and "weld uprights and attach cable or rope across and around the perimeter edge." On cross-examination the witness said the safety devices used would depend upon the particular construction involved and implied he himself had not been to Lewis College.

The next witness to testify was Robert Messer, who had been chief estimator for Paxton and had been hired by La Salle as "project manager" after Paxton's dismissal. He said his job function was to schedule the subcontractors, answer their queries as well as those of supervisors, and inspect the work and its progress. He further testified he had nothing to do with the actual methods, which were left to the individual trades, nor did he become involved in the resolution of disputes, which was in the province of

the architect's duties. Messer admitted that both his and the architect's approval were needed before payment was made by La Salle.

Brother Joel Damian, in addition to confirming facts already testified to, explained other aspects of the case. Although conceding he had referred to Messer as the "superintendent of construction" in the letter he had written to the subcontractors asking them to continue with their work after Paxton, the general contractor, was terminated, he denied Messer had that responsibility. Messer was the job inspector or project manager who coordinated the trades, while the architect was the construction supervisor. Brother Damian said no Christian Brother was involved in the day-to-day supervision of the jobs but that the architect had the responsibility of modifying or stopping the work. He also stated that after Paxton's departure, he requested the subcontractors to continue with the same contract they had with Paxton. They agreed.

There was also testimony regarding Crothers' injuries.

Counsel for Crothers then made two post-hearing motions which are significant in this case. The first was a motion to find La Salle "in charge of" the construction as a matter of law. This was denied. The second motion sought to reopen the plaintiff's case after counsel for Crothers had closed his case, although before La Salle had rested. Crothers' counsel wished to enter the letter from La Salle to the subcontractors, noted above (hereinafter the letter), as an offer of proof to establish Messer's position as "supervisor of construction" and evidence La Salle's control of construction. From the record, it seems the court was inclined to reopen the case and admit the letter into evidence but then refused to do so over La Salle's objection. Counsel for La Salle contended that not only did counsel for Crothers have the letter in hand during the trial but that the letter was simply being offered

to impeach Brother Damian's testimony that Messer was not supervisor of construction. However, because Brother Damian admitted referring to Messer as supervisor of construction, counsel for La Salle said, the letter did not impeach but was cumulative. The court apparently agreed. Counsel for Crothers admitted it had possessed the letter but said he had inadvertently failed to offer the letter before the close of plaintiff's case.

The only other point of concern to us in this case is the trial court's refusal to give one of Crothers' tendered instructions (Illinois Pattern Jury Instruction, Civil, No. 180.14 (2d ed. 1971) (hereinafter IPI Civil)). Crothers had substituted the word "roof" for scaffold, hoist, crane, stay, ladder, support, or "other mechanical contrivance or device," as alternatively offered in IPI Civil No. 180.14, so that his suggested modified instruction read:

> "Elsewhere in these instructions I have used the term 'violation of the Structural Work Act.' The statute was violated if the roof in question was not safe so as to give adequate protection to the life and limb of any person employed thereon and the defendant knew of the condition or, in the exercise of ordinary care it could have discovered it."

The appellate court reversed, holding that the proffered instruction should have been given and that the letter should have been admitted into evidence. The appellate court declined to reverse the trial court's denial of Crothers' motions for directed verdict or judgment notwithstanding the verdict and motion to find La Salle "in charge" as a matter of law, both motions the appellate court finding to be "interdependent."

Although the plaintiff frames the broad issue as whether the trial court should have granted his motion for a directed verdict or judgment notwithstanding the verdict, we believe the specific issues before us are:

(1) Whether the trial court correctly refused to find La Salle Institute in charge of construc-

tion as a matter of law.

(2) Whether the trial court abused its discretion by refusing to reopen plaintiff's case to admit into evidence the letter from La Salle to the subcontractors.

(3) Whether the trial court properly refused to give the instruction that the Structural Work Act was violated if the roof was unsafe. (That is, plaintiff's instruction based on IPI Civil No. 180.14.)

First, we agree with the appellate court that plaintiff's motions for directed verdict or judgment notwithstanding the verdict and for a finding that La Salle was in charge of the work as a matter of law are interdependent; at least to the extent that if La Salle was not conclusively in charge of the work, then Crothers' motion for directed verdict or judgment notwithstanding the verdict must be denied. We further agree with the appellate court that the evidence regarding control of the work was clearly of a nature about which reasonable people could disagree.

The Structural Work Act provides that any "owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof ***." (Ill. Rev. Stat. 1967, ch. 48, par. 69.) It is clear from the statute and the cases (see, *e.g.*, *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305) that, before an owner is liable for injuries under the Act, it must have been in charge of the project. This is ordinarily a question of fact for the jury. In *Gannon,* the defendant railroad owned the premises (on which the plaintiff was injured when he fell from a scaffold), made frequent inspections, and prepared the engineering and architectural plans. The scaffolds, however, were under the individual control of

the construction company, plaintiff's employer. This court found the facts undisputed but held: "Under these circumstances, it was at most a disputed question of fact whether the owner could be deemed to be in charge of the construction within the meaning of the act, and it would be the province of the jury, under proper instructions, to make that determination." (22 Ill. 2d 305, 323.) Accordingly, mere ownership (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533) and actual exercise of supervision or control (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316) are not conclusive, as to being in charge and therefore as to liability, but only factors to be considered by the jury.

In the instant case, Crothers said he took his orders only from his foreman, and Messer testified the manner of construction was entirely in the hands of the subcontractors. There is little doubt that there was a disputable issue of fact as to control and supervision and that the trial court correctly denied Crothers' motions and left it to the jury to decide the liablity of the defendant owner.

Lest there be any doubt as to the correctness of the trial court's handling of Crothers' motion for a directed verdict or judgment notwithstanding the verdict, we wish to add a few words on that issue. In *McGovern v. Standish* (1976), 65 Ill. 2d 54, this court found, on the basis of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, that the evidence, even though viewed in a light most favorable to the plaintiff, so overwhelmingly favored the defendant architect, alleged to be in charge, that no contrary verdict could stand, so that the defendant should have been granted a directed verdict. First noting that it is a fact question, this court then said that "before a defendant may be found to be in charge of the work, there must be a showing that he had some direct connection with the construction operations. [Citation.] In addition, the defendant must have been in charge of the particular

operations which involved the violation from which the alleged injury arose." 65 Ill. 2d 54, 67.

Second, we disagree with the appellate court that the trial court erred by its exclusion of the letter. Initially, we find it necessary to note that from our review of the record and the cases, the issue involved is one of abuse of the trial court's discretion. "The matter of allowing a case to be opened up for taking further evidence rests in the sound judicial descretion of the trial court and will not be interfered with except for clear abuse." *Cienki v. Rusnak* (1947), 398 Ill. 77, 86. Accord, *Forest Preserve District of Cook County v. Lehmann Estate, Inc.* (1944), 388 Ill. 416, and *Rosehill Cemetery Co. v. City of Chicago* (1933), 352 Ill. 11.

From our review of the record, we are unable to say the trial court improperly used or abused its discretion. The letter was clearly in the possession of Crothers' counsel during the course of the trial. There is even some indication that plaintiff's counsel held the letter during his examination of Brother Joel Damian. Whether counsel's failure to offer the letter as evidence before the close of plaintiff's case was due to inadvertence or calculated risk, we are unable to say. We simply find that the trial court was within the limits of its discretion.

Third, the appellate court was correct in its determination that the instruction, tendered by Crothers, that there was a violation of the Structural Work Act if the roof was unsafe, should have been given to the jury.

Section 1 of the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, par. 60) sets out the relevant law:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and con-

structed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

The trial court gave the following instructions, offered by plaintiff. One instruction (based on IPI Civil No. 180.01) incorporated the pertinent parts of the Structural Work Act:

"All scaffolds, cranes or supports constructed by any firm or corporation in the State for use in the erection or alteration of any building shall be erected and constructed in a safe, suitable and proper manner and shall be so placed as to give proper and adequate protection to the life and limb of any person employed or engaged thereon.

Any owner or contractor having charge of the erection or construction of any building within the provisions of this Act, shall comply with all the terms thereof.

For any injury to a person occasioned by any violation of [the Structural Work] Act, a right of action shall accrue to the party injured."

A second instruction, tendered by Crothers, was based on IPI Civil No. 180.04:

"The plaintiff claims that the defendant was one of the persons having charge of a phase of the construction of the building in question.

The plaintiff further claims that the defendant violated the Structural Work Act in one or more of the following respects:

1. Failed to erect *** in a safe, suitable and proper manner a guard rail so as to give proper and adequate protection ***.

2. Failed to erect *** a scaffold ***.

3. Failed to erect *** barricades ***.

4. Failed to erect *** a net ***."

A third instruction offered by Crothers and given by

the trial court was (IPI Civil No. 180.15):

"The statute was violated if the person having charge of the work failed to provide a guard rail, scaffold, barricade or net under circumstances which required a guard rail, scaffold, barricade or net in order to protect the plaintiff from injury and the defendant knew or, in the exercise of ordinary care, could have known that a guard rail, scaffold, barricade or net was required."

As stated above, the trial court declined to give Crothers' offered instruction (based on IPI Civil No. 180.14), which states there is a violation of the statute if the roof from which Crothers fell is unsafe. La Salle objected to the last instruction on the grounds that the instruction assumed or held the roof was a scaffold within the meaning of the Act as a matter of law, whereas such determination of what a roof is or is being used for is a question of fact for the jury. Moreover, La Salle opined the giving of such an instruction would be inconsistent with Crothers' pleadings because they *only* alleged a violation of the statute *by omission*, whereas the instruction proffered was one for violation of the statute *by commission*; that is, the instruction assumed the existence of an erected scaffold, in the form of the roof, albeit an "unsafe" one. The other instructions, above, are consistent with Crothers' pleadings, and therefore sufficient, La Salle argues, because they are concerned with La Salle's *failure* to erect scaffolds.

Plaintiff Crothers contends that, on the basis of this court's holding in *St. John v. R. R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, in which the deceased fell through one of the ventillating or lighting-equipment openings of the roof, the trial court was obliged to give the rejected instruction. This court, in *St. John*, found the roof within the scope of the Structural Work Act. Additionally, Crothers asserts that the language "failed to erect, construct or place in a safe, suitable or proper manner a guard rail, scaffold ***" encompasses providing an unsafe, unsuitable or improper scaffold.

We believe the trial court should have given the proffered instruction. The recent cases, treating the issue of injury as the result of an unsafe support not precisely a scaffold within the precepts of the Act, have left two impressions. The purpose of the Act is protection for workmen; and the Act is construed to effect that benevolent purpose.

*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, is notable for two holdings. First, this court stated that the purpose of the Structural Work Act was to provide protection for workmen, and that to hold that a failure to provide a scaffold under the Act would not be actionable is absurd since the statute would then be construed as imposing a lesser duty than under the common law which the Act was designed to broaden. Second, *Barenfanger* posited that a permanent structure, being used as a temporary stay or support, is not to be excluded from coverage under the Act. *Barenfanger* seems to imply that a question as to the use of the structure for a support purpose or another purpose might exist. In fact, the question of use came up in *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363. There the injured plaintiff had gone to inspect the clean-up operations on a intermediate floor in an otherwise completed structure. There was no lighting, so he used his flashlight. The flashlight fell when his arm struck something. While looking for the flashlight, he fell to the lower floor through a chamber, open from the floor above to the floor below. The plaintiff contended the intermediate floor was a scaffold under the Act. This court rejected that argument, holding that the plaintiff had been *using* the floor *as a floor* and not as a support. Moreover, the plaintiff had failed to show a need for or a failure to provide a scaffold, the court said.

La Salle makes the point that whether a structure is a scaffold must be preceded by a factual inquiry as to whether the structure is being *used* as a scaffold. This may

be so in some cases; and *Barenfanger* and *Tenenbaum* may even give this impression. However, under the facts of the instant case and given two decisions rendered by this court, such a factual inquiry would be superfluous. No question of fact exists here. The roof or structure, in the case before us and in the two cases analyzed below, was clearly being used as the only support—that is, as a scaffold—for a workman. Indeed, the present case presents no dispute of fact as far as the use of the roof by Crothers as a support is concerned.

In *St. John v. R. R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, an action was brought by the parents of a workman who died as the result of a fall through a roof opening (for lighting and ventilating equipment). This court, citing *Barenfanger,* declared:

> "That the roof was intended to be a permanent part of the building is not relevant; it was being put to a temporary use as a scaffold and was within the Structural Work Act.
>
> This conclusion is consistent with the purpose of the Act, which is to provide protection to workmen engaged in extrahazardous work."
> 54 Ill. 2d 271, 274.

The plaintiff was injured, in *Juliano v. Oravec* (1973), 53 Ill. 2d 566, while carrying molten lead in a ladle. His foot went through the "subflooring" on the second floor, as a result of which the lead was thrown onto his face and arm. This court concluded that the subflooring "was a 'stay' or 'support' within the ambit of the Act" because "it is clear that tradesmen engaged in the erection of the structure in question relied upon the subflooring as their sole source of support while working ***." 53 Ill. 2d 566, 569-70.

Therefore, because a roof can be a scaffold under the Act, because the facts are undisputed as to Crothers' use of the roof as a support and because one does not normally

perceive a roof as a support or scaffold, at least for purposes of the Act, we believe the instruction should have been given.

La Salle does point out a flaw in the logic of Crothers' argument that its pleadings of omission—failure to provide for a safe scaffold—incorporated allegations of commission—providing an unsafe scaffold. As La Salle argues, that simply is logically incorrect, and technically Crothers' pleadings do not support the giving of the contested instruction. However, given the benevolent intent of the Structural Work Act and our finding that a roof can be a scaffold, we believe the plaintiff should not be deprived of his proper day in court for a purely logical inconsistency. The pleadings may not have precisely stated the cause of action, but they certainly were not devoid of a substantive cause of action.

Although the trial court did not abuse its discretion by excluding the letter, committed no error for refusing to find La Salle in charge as a matter of law, and properly denied Crothers' motion for directed verdict or judgment notwithstanding the verdict, we believe the cause must be remanded because the trial court did not give the tendered instruction. Accordingly, we affirm the appellate court's reversal and remandment for a new trial.

*Judgment affirmed.*

MR. JUSTICE DOOLEY, specially concurring:

While concurring in this decision, I must note my objection to *McGovern v. Standish* (1976), 65 Ill. 2d 54 (68 Ill. 2d at 407-08), which interprets the statutory words "in charge of" to require proof that "the defendant_must have been in charge of the particular operations which involved the violation from which the alleged injury arose" (65 Ill. 2d 54, 67). This is contrary to the very language of the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60-69), and to prior decisions of this court and other

courts on the issue as to what constitutes "in charge of." More than that, however, it violates the recognized principle that more than one party can be "in charge of" the work.

The Act specifies:

> "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of the act, shall comply with all the terms thereof ***." (Ill. Rev. Stat. 1967, ch. 48, par. 69.)

The objective of the Act is best described by its title, "An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof." To accomplish these purposes, this court has avowed that the Act be liberally construed.

> "We have held on previous occasions that the Structural Work Act should be given a liberal construction to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of working in and about construction, repairing, alteration or removal of buildings, bridges, viaducts, and other structures. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121; *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533; *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.* (1961), 22 Ill. 2d 305.)" (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151.)

To the same effect, see *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 447-48; *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 322; *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 164-65.

In *Gannon v. Chicago, Milwaukee, St. Paul & Pacific*

*Ry. Co.* (1961), 22 Ill. 2d 305, the first case to touch upon the issue "in charge of," this court noted:

"It is inescapable from these words [referring to the statute] that the legislature intended to hold . liable those named persons who are in charge of the work \*\*\*." 22 Ill. 2d 305, 319.

The admittedly leading case on the question of the meaning of the statutory words "in charge of" is *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316. As late as 1975 it was quoted with approval by this court in *Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, a decision which is inconsistent with *McGovern.* In *Larson* the defendant's contention was that it could be liable only if it was "actively engaged in supervisory work" or if it "had something to do with the supervision and management of the job." Defendant was successful in the trial court, but in a reversing opinion this court stated, as quoted in *Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 525-26:

"The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould,* 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with

its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure.

\* \* \*

The term 'having charge of' is one of common usage and understanding, and it is our opinion that further attempt at definition can only lead to confusion and error." 33 Ill. 2d 316, 321-23.

In *Miller v. DeWitt* (1967), 37 Ill. 2d 273, the key aspect of control of the supervising architects was the right to stop the work if it was being done in a dangerous or unsafe manner. This sufficed to make a factual issue whether they were persons having "charge of" the work within the meaning of the statute.

Other cases consistent with *Larson* are *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 101; *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151-52; *Buehler v. Toynan Construction Co.* (1972), 52 Ill. 2d 214, 217; *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 157-58; *Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 537-38.

Appellate court authorities following *Larson*, to name a few, are: *Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880; *Turner v. Commonwealth Edison Co.* (1976), 35 Ill. App. 3d 331; *Fandrich v. Allstate Insurance Co.* (1974), 25 Ill. App. 3d 301; *Scrimager v. Cabot Corp.* (1974), 23 Ill. App. 3d 193; *Long v. Duggan-Karasik Construction Co.* (1974), 23 Ill. App. 3d 812; *Rooney v. Morton Salt Building, Inc.* (1974), 19 Ill. App. 3d 962;

*Daniels v. Weiss* (1974), 17 Ill. App. 3d 294; *Able v. Pure Oil Co.* (1972), 8 Ill. App. 3d 558; *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888; *Jacobson v. 190 North State Street, Inc.* (1971), 2 Ill. App. 3d 256; *Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185; *Bruen v. Burton Auto Spring Corp.* (1970), 130 Ill. App. 2d 477; *Wrobel v. Trapani* (1970), 129 Ill. App. 2d 306; *Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364; *Jones v. S. S. & E. Corp.* (1969), 112 Ill. App. 2d 79; *Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116; *Etheridge v. Cooley* (1968), 101 Ill. App. 2d 348; *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392; *Moroni v. Gulf, Mobile & Ohio R.R. Co.* (1967), 86 Ill. App. 2d 426; *Dinschel v. United States Gypsum Co.* (1967), 83 Ill. App. 2d 466; *Sola v. City of Chicago* (1967), 82 Ill. App. 2d 266; *Palier v. Dreis & Krump Manufacturing Co.* (1967), 81 Ill. App. 2d 1; *Crotty v. High-Low Foods, Inc.* (1966), 78 Ill. App. 2d 237; *Vykruta v. Thomas Hoist Co.* (1966), 75 Ill. App. 2d 291; *Carlson v. Metropolitan Sanitary District* (1965), 64 Ill. App. 2d 331.

The Seventh Circuit has relied upon the teachings of *Larson* and its progeny. As illustrative, see *Schroeder v. C. F. Braun & Co.* (7th Cir. 1974), 502 F.2d 235, 241; *Bail v. Cunningham Brothers, Inc.* (7th Cir. 1971), 452 F.2d 182, 183.

As noted, *McGovern v. Standish* (1976), 65 Ill. 2d 54, is contrary to the principle that more than one person may have "charge of" the work. This principle is announced in the Illinois Pattern Jury Instructions thus:

> "Under the statute I have just read to you, it is possible for more than one person to 'have charge of' the work. One or more persons can have charge of the overall work, and other persons can have charge of the phase of the work in connection with which an injury occurs. In that event, all of them would 'have charge of' the work within the meaning of the statute.
>
> Who had charge of the work under the particular

facts of this case is for you to decide." (IPI Civil No. 180.02 (2d ed. 1971).)

In support of this instruction are *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 291; *Li Petri v. Turner Construction Co.* (1967), 36 Ill. 2d 597; *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316; *Dinschel v. United States Gypsum Co.* (1967), 83 Ill. App. 2d 466, 476; *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 449; *Yankey v. Oscar Bohlin & Son, Inc.* (1962), 37 Ill. App. 2d 457, 468.

Under the terms of *McGovern,* the person having charge of the overall work would not be a party having "charge of" the work. The only person in "charge of" the work would be he who was "in charge of the particular operations which involved the violation from which the alleged injury arose." *McGovern v. Standish* (1976), 65 Ill. 2d 54, 67.

The effect of the interpretation of the statute accorded by *McGovern* could be to defeat the objectives of the Act. A casual reading of the Structural Work Act cases reveals that in multiple instances the injured is an employee of a subcontractor whose action is most frequently against the general contractor, or the owner, and sometimes against the architect. While the general contractor, owner or architect may be in control of the overall job and responsible for a violation of the Act, he does not, as a rule, supervise the particular operation from which the injury arose. The subcontractor hires and fires his employees, directs the methods in which they do their work, and performs those innumerable functions common to employer and employee. Realistically speaking, the general contractor, owner or architect who had charge of the overall work could defend a violation of the Act by urging that he was not "in charge of the particular operation which involved the violation from which the alleged injury

arose." (*McGovern v. Standish* (1976), 65 Ill. 2d 54, 67.) This could emasculate the Act, since the employee has no right of action under the Structural Work Act against his employer if the Workmen's Compensation Act applies. (See *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 318.) Yet, by circumscribing the meaning of the words "in charge of," those violating the Act would be insulated from exposure to the statute, and, correspondingly, those for whom the Act was passed would be deprived of its benefits.