DAVID GREENSTREET, Plaintiff-Appellant, *v.* DEERE AND COMPANY, Defendant-Appellee.—(BERT M. LAFFERTY COMPANY, Third-Party Defendant-Appellee.)

Third District   No. 79-348

Opinion filed February 28, 1980.

Raymond J. Conklin and Robert L. Ellison, both of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellant.

John M. Telleen, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee Bert M. Lafferty Company.

Robert J. Noe, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee Deere and Company.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff David Greenstreet initiated this action to recover damages sustained in a fall from a swing-stage scaffold by filing a complaint in the circuit court of Rock Island County alleging violation of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) by defendant and third-party plaintiff Deere and Company (hereinafter Deere). Third-party defendant Bert M. Lafferty Co. (hereinafter Lafferty) joined Deere in moving for summary judgment. Holding that Deere was not, as a matter of law, "in charge of" the work involved, the trial court granted the motion and declared the third-party action moot.

Giving rise to this litigation was the painting of certain portions of John Deere Plow and Planter Works in Moline, Illinois, by Bert M. Lafferty Company of Rock Island, Illinois, a general contractor which at the time of the injury involved, employed plaintiff as a painter. Among the provisions contained in the construction contract between Deere and Lafferty were the following terms and conditions:

"3. Owner's Right to Access

Owner reserves the right of access to any premises where the work is being performed.

4. Owner's Right to Terminate Order

If contractor should:

* * *

(c) Refuse or fail except in cases for which extension of time

is provided, to supply enough properly skilled workmen or proper materials;
* * *

(e) Disregard or violate law, regulations or ordinances;

(f) Persistently ignore the requests or instructions of Owner.

(g) Fail to complete the work by the completion date herein where no extension of time has been granted * * *.
* * *

(h) Be guilty of a substantial violation of any provision of this Order;

(i) Then the Owner may, without prejudice to any other right or remedy it may have and after giving the Contractor seven days written notice, terminate this Order and take possession of the premises * * *.
* * *

8. Protection of Work and Property

Contractor shall continuously maintain adequate protection of all work from damage and shall protect Owner's property from injury or loss arising in connection with the work. He shall adequately protect adjacent property.

Contractor shall take all reasonable precautions for the safety of employees on the work and shall comply with all applicable provisions of Federal, state and municipal safety laws and building codes to prevent accident or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and properly maintain at all times, as required by conditions and progress of the work, all necessary safeguards for the protection of workmen and the public. He shall designate a responsible member of his organization on the work whose duty shall be the prevention of accidents. Contractor shall comply with Owner's Safety Regulations.
* * *

11. Defective Work and Materials and Warranty

Owner shall notify Contractor in writing of all work and materials deemed by Owner to be defective. Contractor shall promptly thereafter make all necessary corrections. Should Contractor fail to do so, Owner may at its sole option and without further notice correct the defect. In addition, Owner shall have the right to terminate the Order

in accordance with and pursuant to the provisions of Paragraph 4, above.

Contractor expressly warrants that all the material and work covered by this Order will conform to the specifications, drawings, samples or other description furnished or adopted by Owner, and will be of good material and workmanship, free from defects, and will be merchantable and fit and sufficient for the purposes intended.

12. Changes in Work or Material

Owner reserves the right to alter or modify this Order and correspondingly to add to or deduct from the basic Order price without invalidating the Order. No alterations or extra work shall be done unless agreed upon in writing and the price approved by Owner.

\* \* \*

18. Termination

Owner may terminate this Order for its convenience, in whole or in part, by written or telegraphic notice at any time. \* \* \* For the purposes of this Order, termination for Owner's convenience shall not include termination by the Owner for any of the reasons enumerated in Paragraph 4 of this Order."

Deere had additionally sent Lafferty and other contractors a letter setting forth its general safety regulations. In his deposition testimony, John Gault, a Deere employee who made periodic inspections of the status of the project, explained:

"\* \* \* We attempt to enforce safety regulations upon contractors that directly relate to the same things that we require of our own employees. An example of that would be safety glasses. Another example is conformance with the laws on how many people ride on a fork truck. Where the work and the safety are exactly the same kinds of things that we require our own people to do, we attempt to enforce that on contractors. By 'attempt to enforce,' we would discuss it with the job superintendent or with the principals of the company if we saw flagrant violations."

Under these and other provisions and regulations, Lafferty proceeded with the painting of at least one Deere building. Directing the work for Lafferty was job site foreman Jerry Martins, who additionally worked with plaintiff as part of a two-man crew. Charles Porter, supervisor of work for Lafferty, was responsible for "keeping everything kind of running" and was Lafferty's safety officer. Overseeing the

operation was Lafferty's vice-president, William Willitts, from whom Martins received his instructions. Lafferty supplied all scaffolding equipment and material for the project, and Martins determined where to put the swing-stage scaffold and inspected and assisted in its erection on the day of the accident.

In his deposition, Martins stated that there was a Deere engineer on the job and we note the following exchange:

"Q. Now, how frequently was he on the job?

A. He would be around a couple times a day to see how you were coming and how the job was going and to make sure you were doing the job right.

＊ ＊ ＊

Q. Would he customarily, this job engineer, would he customarily come to the job site once in the morning and once in the afternoon?

A. Yes, it would usually be once or twice a day. You never knew for sure when he was going to come by to see if you had any questions or problems.

＊ ＊ ＊

Q. Generally what were your conversations with the engineer from Deere and Company on the project?

A. Well, the right color and stuff like that, if they wanted this or that fixed besides, caulked or something around the windows."

Martins also had direct conversations with Deere personnel to effect the moving of materials. These conversations consisted of:

"＊ ＊ ＊ getting them to move stuff away from the walls, back away from the walls, maybe grabbing a fork truck driver or somebody that was coming by and having them move stuff back or an engineer and having him clear that area out."

Martins' testimony, however, indicates Deere made no effort to intervene in the matter of the scaffolding or attendant safety precautions:

"Q. Did he ever give you any suggestions about the way you were doing the work?

A. You mean the way we were rigging the stage?

Q. Yes.

A. No, it is not his job.

Q. Well, did Deere and Company give you any safety instructions when you began to work there?

A. No.

Q. Did they hold any safety meetings?

A. No."

Martins further testified that he was not required to contact the "job

superintendent," an apparent reference to the engineer, and was never advised by him or any other Deere employee as to any aspect of the project.

Summary judgment should be granted if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1973, ch. 110, par. 57(3).) On appeal, plaintiff contends the trial court erred in entering summary judgment as a genuine issue of fact existed as to whether Deere is a person "having charge of" the work within the meaning of the Act. (Ill. Rev. Stat. 1973, ch. 48, par. 69.) As "such a determination must rest upon an assessment of the totality of the circumstances" (*McGovern v. Standish* (1976), 63 Ill. 2d 54, 68, 357 N.E.2d 1134, 1141), we are called upon to decide whether that totality reveals a genuine issue of fact regarding Deere's so "having charge of" the work in the case at bar.

Since *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785, overruled the nondelegable duty of compliance previously imposed upon each class of persons named in the act by *Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134, in favor of imposing liability on those named persons "who are in charge of the work," the courts of this State have frequently had to consider what evidence is required to establish this status. While declaring the term "having charge of" to be "one of common usage and understanding" in *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247, 252, the court nonetheless provided this observation:

"* * *The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould,* 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual

work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." The cases following *Larson* are legion and are collected in the concurring opinion in *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 416-17, 370 N.E.2d 213, 221-22.

While the *Gannon* court had stated a person must have had charge of the "construction operations involving the violation" (*Gannon*), it was not until *McGovern v. Standish* (1976), 65 Ill. 2d 54, 67, 357 N.E.2d 1134, 1141, that the court expressly held that "the defendant must have been in charge of the particular operations which involved the violation from which the alleged injury arose", an interpretation which has been questioned (see *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 125, 373 N.E.2d 1348, 1354 (concurring opinion); *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 416, 370 N.E.2d 213, 221 (concurring opinion); *McGovern v. Standish* (1976), 65 Ill. 2d 54, 70-71, 357 N.E.2d 1134, 1142 (dissenting opinion)) and explained as later noted. See *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 118, 373 N.E.2d 1348, 1351.

We shall briefly note the three decisions cited by the trial court and variously distinguished by the parties to this action.

*McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134, involved an ironworker who brought suit against a construction project architect. The plaintiff had never seen or received any orders from the defendant, who had prepared working drawings for the construction and hired a project inspector at the request of the owner hospital. The inspector observed and discussed the work but had no authority to instruct project workmen. The construction contract provided that the architect had the right to stop the work with ten days notice under certain conditions but the court held this right was not conclusive in determining whether the architect was in charge of the work. The contract also provided that safety provisions of applicable laws must be followed. As "the defendant's function was limited to generally overseeing the work" (*McGovern v. Standish* (1976), 65 Ill. 2d 54, 69, 357 N.E.2d 1134, 1142), the court held that the architect was not liable under the act.

*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348, involved a worker who brought suit against both the owner of the premises and its architect. Owner-defendant State Farm maintained a department, coordinating the design and construction of its buildings, which prepared the preliminary plans for the building involved. During construction, over 1,300 inspections were made by employees of State Farm, who additionally issued 127 change orders but did not otherwise exercise control over the manner in which the work was

being done or concern itself with the assembling or construction of scaffolds. Architect-defendant Ellesbe Associates had authority to stop the work whenever necessary to insure the proper execution of the contract. The court held there was sufficient evidence for the jury to find both owner and architect were persons having charge of the construction and explained:

> "\* \* \* If the language in the majority opinion in *McGovern* was intended to mean that it may be shown that a person was 'in charge of the particular operations which involved the violation from which the alleged injury arose' (65 Ill. 2d 54, 67) either by proof that he exercised control, or that the right to control the work existed, whether exercised or not, it correctly states the law. \* \* \*"
> *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119, 373 N.E.2d 1348, 1351.

*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403, the most recent pronouncement of the supreme court on this question, was a suit by a worker who was struck by a steel ball and hook, against the owner-defendant school district. The district employed a "Clerk of the Works" who among other duties, inspected the construction work, made certain specifications were met, and had weekly meetings with the architect, contractor, and subcontractors where safety was never discussed. He reported needed changes to the architect and had work redone at his direction. The contract between the school district provided the contractor was responsible for safety and for appointing a safety superintendent, providing requested reports while the owner had to approve changes, order extra work, extend the completion date, and had to have access to the work. The owner and architect could establish limits on the operations of workmen. The court concluded:

> "Our review of the evidence demonstrates retention of supervision and control of the construction by the school district. Even if that were not so, assessment of the totality of the circumstances shows the school district was sufficiently in charge of the construction to justify a finding of liability. Delaney daily made inspections and had work redone. He was generally familiar with construction methods and specifically familiar with the bar joists; hence, he was in a peculiarly appropriate position to be the 'first one to know if there is some deviation' and have it alleviated, either at his direction or through the architect. Although the inability to 'stop' the work or terminate a contract before the lapse of 10 days might be decisive in another case, it is not here. We find from the evidence this is not a case in which 'the manner of doing the work was left up' entirely to the contractor. *Carruthers v. B. C.*

*Christopher & Co.* (1974), 57 Ill. 2d 376, 378." *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 491, 394 N.E.2d 403, 408.

In the case at bar, Deere reserved the right of access to the work site as well as the right to terminate the work, after seven days' notice, if the contractor failed to supply enough manpower or materials, disregarded regulations, ignored requests or instructions, or violated contractual provisions. It was expressly stipulated that the contractor had to comply with Deere's safety regulations. Deere also retained the right to terminate the work, in whole or part, for its convenience. If either work or materials were deemed defective by Deere, it could order corrections made or ultimately make the corrections itself. Deere further retained the right to alter or modify the work.

In addition to the above contractual rights, it is uncontroverted that a Deere engineer came to the job site at least once each day and two Deere employees periodically inspected the job site. General contractor Lafferty was sent the Deere safety regulations which were contractually mandated and which Deere attempted to enforce. While the instructions they received were from the Lafferty foreman, Martins, Deere employees were directly involved in the moving of material in clearing the job site.

Whether a defendant is a person "having charge of" the work within the meaning of the act is primarily a factual decision (*e.g., Gannon*), and there are numerous factors which may be considered in its determination. (See *Westerfield v. Arjack Co.* (1979), 78 Ill. App. 3d 137, 142, 397 N.E.2d 451, 455.) Considering those factors present in the case at bar, even as those factors may only be evidence of a minimal contact with a project, we find a genuine issue as to the material fact of whether Deere was in charge of the work within the meaning of the act.

Accordingly, the judgment of the circuit court of Rock Island County is reversed and this cause remanded for further proceedings consistent with our views herein.

Reversed and remanded.

ALLOY and SCOTT, JJ., concur.